HAROLD W. AND MARY E. CUCKLER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROYDEN BROWN AND DORIS BROWN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 87982,[1] 93268. Filed March 29, 1963.

*Gene W. Reardon, Esq.,* for the petitioners in Docket No. 87982.
*John Corbridge, Esq.,* for the petitioners in Docket No. 93268.
*Jack Morton, Esq.,* for the respondent.

---

[1] The Cuckler and Brown cases, Docket Nos. 87982 and 93268, were consolidated for trial and briefing. These two cases and two other related but separate cases, Walter Lacy and Alois Lacy, Docket No. 93334, and Trinidad National Bank, Docket No. 93182, were all tried together with the agreement that all testimony and evidence introduced at the trial, except separate written stipulations previously agreed upon in each case and introduced only in the case to which each related, would apply to and be part of the record in every case. All counsel were permitted to question all witnesses.

OPINION.

MURDOCK, *Judge:* The principal question for decision in this case and the only question for decision in the Lacy case is whether the bank stock was sold to Lacy for $475,000, as Cuckler and Brown contend, or whether there was a sale of the bank stock for $375,000 and a sale by Cuckler, Brown & Co. of the bank building to Lacy for $100,000, as Lacy contends. The Commissioner has taxed a dividend to both resulting from a bargain sale of the bank building but concedes that only one tax is due. There is confusion because of the peculiar wording of the written contract of July 16, 1955. It is proper in tax cases to look through form to substance, if that is necessary, in order to determine the correct tax consequences of the acts of each taxpayer and those dealing with him in the transaction or transactions in dispute. *Sarah Helen Harrison,* 17 T.C. 1350. Cf. *Helvering* v. *Lazarus & Co.,* 308 U.S. 252. Niceties of title or conveyancing should not hide the tax effects of whole transactions. Cf. *Gregory* v. *Helvering,* 293 U.S. 465; *Griffiths* v. *Commissioner,* 308 U.S. 355, 357; *Rupe Investment Corporation* v. *Commissioner,* 266 F. 2d 624, affirming 30 T.C. 240; *Estate of Arthur L. Hobson,* 17 T.C. 854.

Cuckler and Brown rely on Cuckler's testimony in explanation and clarification of the written contract dated July 16, 1955. Cuckler was called by the Commissioner and gave his testimony as the Commissioner's witness. There was no objection to his testimony by any counsel in this case, all of whom seem to agree that the contract is

ambiguous and parol evidence is proper. The Court agrees. See *Walter Lacy*, 39 T.C. 1100 (promulgated with this case). All counsel agreed that all testimony received during the trial of the related cases would apply in all of those cases. Lacy's counsel objected to the admission of parol evidence and stated at the trial: "So far as Mr. Lacy is concerned he does not care to give the Court an explanation of the Contract before the Court." However, the Commissioner called Lacy as a witness and in the course of his testimony he said that Cuckler "increased the price of the bank building $33,000" and also stated: "This was an additional $33,000 over and above the price of this contract of three seventy-five for the bank and also a hundred thousand for the building, and there was some discussion between Mrs. Briggs and I whether we were willing to pay this additional $33,000, and we finally decided this was a good transaction in purchasing the bank, regardless of an additional $33,000." It is clear, even under the terms of the contract, that Cuckler and Brown received only $475,000, received no part of an "additional $33,000," and parted only with their bank stock. The Court concluded that the July 16 agreement was sufficiently ambiguous to permit parol evidence by both Cuckler and Lacy to explain what they intended and what the $475,000 was paid for.

Certainly that agreement needs clarification for tax purposes and the Commissioner gave both Cuckler and Lacy full opportunity to explain their actions. Lacy did not attempt a full explanation and his statement in regard to the $33,000 was less than convincing. The sellers never asked more than $475,000 for the only property they had to sell, the stock, which carried with it all assets of the bank, including the bank building. If Lacy could have raised and paid the $475,000 for the stock, he could have avoided the $33,000 payment to the bank, the transfers of title to the bank building, the $146.30 cost of documentary stamps, and all of the deficiencies in these cases based upon the transfers of the bank building. Furthermore, if Cuckler and Brown had received the bank building as a dividend, it would be one of $133,000, not $100,000, as determined by the Commissioner, since that real estate had then a fair market value of $133,000 and Cuckler and Brown paid nothing for it.

Cuckler gave an explanation which impresses the Court as a reasonable one. It appears, from his testimony and from other evidence applicable to all cases, that Lacy (perhaps with the assistance of his mother) had arranged with an Oklahoma bank for a loan of $375,000, with the bank stock to be pledged as security; he needed an additional $100,000 to complete the purchase of the stock; and all references to the "Bank Building," were placed in the agreement at Lacy's request solely to give him time and means to complete arrangements

with a Denver bank for a loan of $100,000 on which he would pledge the "Bank Building" as security. Lacy paid $33,000 into the Trinidad Bank to keep its book assets unchanged in amount so that the lender of the $375,000 might not complain. Cuckler, Brown & Co. held title to the bank building for 2 days as security for the balance owed them and only until Lacy completed arrangements to borrow the balance he owed Cuckler and Brown. It is reasonably clear that Cuckler and Brown did not want to own the bank building and that Lacy had no intention to permit them to own it. The complicated provisions in the July 16, 1955, agreement, all placed there at Lacy's insistence and for his benefit, should not conceal the fact that what Cuckler and Brown sold for $475,000 was their bank stock. Cuckler and Brown started off with 1,000 shares of bank stock which they desired to sell for $475,000, they parted with that stock and nothing more, and they received $475,000 and nothing more. All acts performed by the bank "stockholders," officers, and directors, after Lacy acquired beneficial ownership and control of all of the bank stock on July 16, 1955, in carrying out the terms of the agreement of July 16, 1955, with respect to the bank building, are chargeable to Lacy who then alone was in position to require those acts to be performed. *Frithiof T. Christensen*, 33 T.C. 500, and cases there cited. Cuckler and Brown were not the beneficial owners of the stock on July 18, 1955, when title to the bank building was transferred to them and had no right to bind the corporation except to carry out Lacy's directions.

Cuckler and Brown realized a long-term capital gain and nothing else taxwise. The Commissioner erred in taxing them with a dividend from the bank. Lacy paid $475,000 to Cuckler and Brown and acquired their 1,000 shares of stock, he paid $33,000 to the bank, plus $146.30 for transfer stamps, and acquired the bank building. The Commissioner determined that Lacy received a taxable dividend from the bank through acquisition of the bank building worth $133,-000, for which he paid the bank $33,000. The Court has held in his case that the evidence does not show that the Commissioner erred.

The only remaining question for decision is the fair market value on April 18, 1955, of the unpaid balances on nine notes which the bank had previously charged off. The Commissioner relies upon the presumption of correctness attaching to his determination and upon some evidence of later collections on one or two of the debts. These collections were shown to be due to events unexpected in April 1955 The petitioners have introduced evidence overcoming the presumption and from which the Court, using its best judgment, has determined a fair market value of $10,500.

*Decisions will be entered under Rule 50.*