341 F.2d 54
 65-1 USTC P 9205
 Walter LACY and Alois Lacy, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
Harold W. CUCKLER and Mary E. Cuckler, Respondents.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
Royden BROWN and Doris Brown, Respondents.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
TRINIDAD NATIONAL BANK, Respondent.
 Nos. 7524-7527.
 United States Court of Appeals Tenth Circuit.
 Jan. 28, 1965.
 
 David I. Granger, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., John B. Jones, Jr., Acting Asst. Atty. Gen., and Lee A. Jackson and David O. Walter, Attys., Dept. of Justice, with him on the briefs), for Commissioner of Internal Revenue.
 Donald K. Groom, Oklahoma City, Okl., for petitioners Lacy.
 Gene W. Reardon, Denver, Colo. (John Corbridge, Denver, Colo., with him on the brief), for respondents Cuckler and Brown.
 Laurence A. Ardell, Pueblo, Colo., for respondent Trinidad Nat. Bank.
 Before LEWIS, BREITENSTEIN and HILL, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 These four petitions to review decisions of the Tax Court arise from a series of transactions in which Lacy, petitioner in No. 7524, purchased from Cuckler and Brown, respondents in Nos. 7525 and 7526 respectively, all shares of stock and assets of Trinidad National Bank, respondent in No. 7527.[1] The dispute centers around disposition of the bank building which was admittedly worth $133,000 and was carried on the Bank's books at $33,000. As part of the purchase and sale the Bank conveyed its building to Cuckler and Brown for $33,000 paid by Lacy. Cuckler and Brown then conveyed the building to Lacy who borrowed $100,000 on it and paid that sum to Cuckler and Brown. The questions are whether the building transaction was a $100,000 dividend to Lacy, a dividend to Cuckler and Brown, or a sale by the Bank which resulted in a capital gain to it. The Tax Court held that the effect of the maneuvers was a taxable dividend from the Bank to Lacy; that Cuckler and Brown received no dividend; that the Bank had no capital gain; and that the deficiency in the tax paid by the Lacys for 1955 was $57,759.75.
 
 
 2
 The cases were presented and decided on the same evidence. The Tax Court made separate decisions in No. 7524 (Lacy), in Nos. 7525 and 7526 (Cuckler and Brown), and in No. 7527 (the Bank).[2] Lacy brought a petition to review and the Commissioner filed protective petitions in the other three cases contending that if Lacy prevailed in his petition, the Commissioner was entitled to a reversal of either the Cuckler and Brown cases or of the Bank case. The prime position of the Commissioner, and of the other respondents, is that the Tax Court correctly decided the Lacy case.
 
 
 3
 Harold W. Cuckler and Royden Brown were equal partners in a partnership known as Cuckler, Brown & Company. The partnership owned all the 1,000 shares of stock of Trinidad National Bank and listed that stock with an Omaha broker who furnished an introduction to Lillian Briggs, the mother of Lacy. Cuckler negotiated with Briggs and Lacy who, after examining the assets and books of the Bank, verbally accepted an offer for the sale of all the bank stock for $475,000. In these negotiations Cuckler did not act on behalf of the Bank. By written agreement dated July 16, 1955, Lacy agreed to buy, and Cuckler, Brown & Company agreed to sell, all the shares of stock of the Bank for $475,000, which was to be 'the total amount received by the Sellers for the Banking Corporation Stock and the Banking Building.' The purchase and sale were to be effected thus: The sellers were to purchase the bank building from the Bank with $33,000 to be furnished by Lacy 'for his interests in holding the bank undivided profits the same as it were before the transaction.' Lacy 'agrees to purchase' the bank stock 'without the Banking Bldg.' for $375,000 and to purchase the building for $100,000 to be paid for in quarterly instalments of $3,000 bearing 3% Interest with the unpaid balance due at the end of the third year. The Bank was to have a long-term lease on the building and this lease was to be used with the bank building 'to effect a loan on the building in the amount of $100,000.'
 
 
 4
 Lacy borrowed $375,000 from an Oklahoma bank by agreeing to pledge the Trinidad Bank stock and paid that sum to Cuckler, Brown & Company. On July 16, 1955, Lacy paid $33,000 to the Bank to take the place of the building which was carried on the Bank's books at that amount. Bank minutes dated July 18 record a meeting at which stock voted by Cuckler, Brown, and their nominees authorized the sale of the building to Cuckler, Brown & Company for $33,000. On the same day the Cuckler-Brown officers and directors resigned and were replaced by Lacy designees; and a deed was executed conveying the building to Cuckler, Brown & Company which on July 19 gave a lease back to the Bank for 20 years at a rental of $1,000 per month. On July 20, Cuckler, Brown & Company deeded the building to Lacy who then pledged it as security for a $100,000 loan which he obtained from a Denver bank and paid that amount to Cuckler, Brown & Company. That partnership did not receive any rent, quarterly payment, or interest on account of its brief ownership of the building. The federal documentary stamps on the two deeds were paid for by Lacy. In December, 1955, Lacy reduced the bank rent to $500 a month and in 1957 he conveyed the building to the Bank for $133,000.
 
 
 5
 The fair market value of the building in July, 1955, was $133,000. At that time the Bank had more than $100,000 in surplus and undivided profits. The Commissioner in determining the deficiency held that Lacy, as a bank stockholder, 'constructively realized dividend income of $100,000 in 1955 resulting from the purchase from the Bank of property worth $133,000 for a consideration of $33,000.' The Tax Court held that the purpose of the described transactions 'was to enable Lacy to purchase the 1,000 shares of Bank stock for $475,000.'
 
 
 6
 Lacy argues that the Tax Court violated the parol evidence rule by admitting testimony of Cuckler that he and Brown sold only their stock for $475,000 and that they held the building for two days as a security measure.[3] The objection is that this testimony varied the terms of an unambiguous contract.
 
 
 7
 We have here a fight among four taxpayers over who owes income taxes because of a transaction in which all participated. The substance rather than the form of the transaction is controlling.[4] Consideration may be given to motives, intent, and conduct in addition to what appears in written instruments.[5] In the case at bar background and accomplished results are pertinent to the tax consequences. The background is that Cuckler and Brown agreed to sell, and Lacy verbally agreed to buy, the bank stock for $475,000. The result is that Lacy obtained all the stock and paid for part of it by using an asset of the Bank.
 
 
 8
 Although the ambiguity of the contract may be arguable,[6] we are convinced that parol testimony was admissible to explain the intent and motives of the parties. In no other way may substance be separated from form. Clarity in the terms of the contract does not dispel doubt over the reason for the separation of the building from the stock when ownership of all the stock carried with it ownership of the building. A reading of the contract raises the suspicion that the arrangement used was to help Lacy buy the bank stock with some of the bank assets. This suspicion is dissipated or sustained by testimony of intent. Cuckler gave an explanation which the Tax Court found reasonable and persuasive.[7] When Lacy was on the stand his counsel stated that 'so far as Mr. Lacy is concerned he doesn't care to give the Court an explanation of the contract before the Court.'
 
 
 9
 Lacy directs attention to the stipulation of facts wherein reference is made to the July 16 contract and a copy thereof is attached as an exhibit. He argues that such reference is a judicial admission which precludes parol evidence. The simple answer is that the stipulation merely agrees that the contract was in existence. No admission is made of the tax consequences of the transaction.
 
 
 10
 The decisive question is whether Lacy, at a time when he was a shareholder, obtained the building from the Bank at less than its fair market value. The pertinent provisions of 301 of the Internal Revenue Code of 1954,26 U.S.C. 301, are that a distribution of corporate property to a shareholder is treated as a dividend if a difference exists between the amount paid for the property and its fair market value.[8] Lacy says that 301 does not apply because he received the building from Cuckler and Brown rather than from the Bank and that at the time he was not a shareholder of the Bank.
 
 
 11
 We agree with the Tax Court that on July 16, 1955, Lacy had beneficial ownership and control of all of the bank stock. The subsequent acts are all chargeable to Lacy because he alone was in a position to require them to be performed. The temporary title of Cuckler and Brown to the building was to secure them during the two days Lacy needed to raise the $100,000 on the mortgage of the building. When all the dust settled, the ultimate facts were revealed. Cuckler and Brown had their $475,000 and Lacy had all the bank stock; but Lacy had paid $100,000 of the purchase price by obtaining and mortgaging an asset of the Bank after he was the beneficial, if not the legal, owner of all the stock. The transfer of the property to him for less than its fair market value was a dividend to him because he was in control of the Bank and
 
 
 12
 In Nos. 7524, 7525, 7526, and 7527 the decisions and orders of the Tax Court are severally affirmed.
 
 
 
 [1]
 Alois Lacy, Mary E. Cuckler, and Doris Brown are parties because they filed joint returns with their respective husbands
 
 
 [2]
 The Lacy decision is reported at 39 T.C. 1100 and the decision on Cuckler and Brown is reported at 39 T.C. 1107. The Bank decision was not officially reported. See 1963 P-H Tax Ct. Mem., P63,093
 
 
 [3]
 Cuckler and Brown reported the sale of their stock at $475,000 on their income tax returns and treated the transaction the same way in their books and records
 
 
 [4]
 McSorley's Inc., v. United States, 10 Cir., 323 F.2d 900, 902
 
 
 [5]
 United States v. Cumberland Pub. Serv. Co., 338 U.S. 451, 454, 70 S.Ct. 280, 94 L.Ed. 251, n. 3
 
 
 [6]
 The Tax Court held the contract was ambiguous because of lack of clarity whether Lacy was buying the stock for $475,000 or was buying the stock for $375,000 and the building for $100,000
 
 
 [7]
 Cuckler testified: '* * * we sold for $475,000, but the new purchasers only had three hundred seventy-five. We were willing to take the bank building as security for the additional hundred thousand. All of these later deeds, as they have been spoken of, were executed after the sale of this stock, after we had made an agreement to transfer our stock for the sum of $475,000.'
 
 
 [8]
 See Treas.Reg. 1.301-1(j)
 
 
 [9]
 See Rupe Inv. Corp. v. Commissioner, 5 Cir., 266 F.2d 624, 630; Frithiof T. Christensen, 33 T.C. 500, 505