**P. M. FINANCE CORPORATION,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

Nos. 13713, 13714.

United States Court of Appeals
Third Circuit.

Argued Jan. 11, 1962.

Decided May 10, 1962.

Robert Ash, Washington, D. C. (Carl F. Bauersfeld, Washington, D. C., on the brief), for petitioner.

William Friedlander, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before BIGGS, Chief Judge, and KALODNER and GANEY, Circuit Judges.

BIGGS, Chief Judge.

The petitions for review raise the question of deductibility, pursuant to Section 163(a) of the Internal Revenue Code of 1954,[1] of "interest on indebtedness" paid by P. M. Finance Corporation to two debenture holders, one of whom, Philip Frank, owns the outstanding capital stock of the corporation. The other debenture holder is Philip's wife, Hilda. The Tax Court decided that the payments made by P. M. were not deductible as interest on indebtedness. It sustained the Commissioner's determination of income tax deficiencies against P. M. for the taxable years ending May 31, 1955, May 31, 1956, and May 31, 1957.[2]

[1]. 26 U.S.C.A. § 163(a): "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."

[2]. The Tax Court's decision was not reported officially.

The facts, some of which were stipulated below, are not in dispute. P. M. was incorporated under the laws of Pennsylvania on June 23, 1953. P. M.'s business was lending money to finance purchases of tap rooms and cocktail lounges. Its authorized capital stock consists of 1,000 shares each having a par value of $25. On the day of incorporation 400 shares were issued to Philip Frank. The purchase price, $10,000, was paid by him on July 8, 1953. No dividends have been paid on these shares and there are no other shares outstanding.[3] Approximately one week after incorporation, *viz.*, on July 1, 1953, the board of directors of P. M. Finance authorized a $300,000 issue of non-voting, five-year, $1,000 debenture bonds, bearing interest of 7% per year. The bonds were unsecured and there is no evidence that provision was made for a sinking fund. Over the period from July 8, 1953 to September 3, 1953, Philip Frank, the president and sole stockholder of the corporation, advanced to it $90,000 and received 90 debentures in return. No additional debentures were issued until March 23, 1954, when Hilda Frank, who was the secretary of P. M., advanced to the company $50,000 and acquired 50 debentures. The only other sale of debentures occurred early in 1957, at which time bonds with a face value of $14,000 were issued to 13 persons. No payment has been made on the principal on the bonds held by Philip and Hilda Frank but some of the debentures issued in 1957 to other persons have been retired. Interest on the debentures has been paid when due. Each debenture shows on its face an unconditional obligation to pay a sum certain in five years with interest at 7% a year.[4]

The capital raised by P. M. through issuance of stock and debentures did not meet its business needs. It had to borrow substantial amounts from banks.[5] The loaning banks, which need not be named here, advanced money to P. M. to the extent of 75% of the notes received by P. M. from P. M.'s borrowers. As security for these loans, P. M. pledged to the banks the collateral pledged by the borrowers. The financing was carried on on an instalment basis: the borrowers repaying stated amounts to the taxpayer each week, and P. M. in turn making weekly payments to the banks.

The record does not show precisely when the bank loans commenced but it is probable that the date was October 9, 1953. At this time Philip Frank, P. M. and the first lender bank entered into a subordination agreement. This agreement, required by the bank before it would advance money to P. M., provided

3. We assume that qualifying shares were issued, see 15 P.S. § 2852–204(10) (Supp. 1961), although this does not appear from the record.

4. Each debenture reads as follows:
"UNITED STATES OF AMERICA
COMMONWEALTH OF PENNSYLVANIA
$1000.00 P. M. FINANCE CORP.
7%, 5 Year Registered Debenture Bond
Authorized Issue—$300,000.00
P. M. Finance Corp., a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with its main and principal office in Philadelphia, Pennsylvania, (hereinafter called "Company"), for value received hereby promises to pay     on presentation of this Registered Debenture Bond, the sum of $1,000.00, on the     day of     , 19   .
Company shall meanwhile and until the principal shall be paid in full, pay interest thereon at the rate of 7% per annum with the first interest payment to be made at the end of the current fiscal year and then in semi-annual payments thereafter. Company hereby charges with aforesaid payments its undertaking and all its property whatsoever and wheresoever, both present and future.
This Registered Debenture Bond is one of an issue of like tenor, numbered consecutively, executed or about to be executed by Company.
IN WITNESS WHEREOF, Company has caused its corporate seal to be hereunto affixed, together with the signatures of its President and Secretary thereunto duly authorized on the     day of     , 19   ."

5. P.M.'s borrowings from institutional sources at the end of fiscal 1955 were in the amount of $632,203.45; 1956, $651,789.80; and 1957, $552,304.60.

that the present and future indebtedness of P. M. to the bank was to have priority in payment over present [6] and future corporate obligations to Philip Frank. Philip agreed to accept payment of the principal on the debentures owned by him only after P. M. had repaid the bank present and future indebtedness, principal and interest, in full. Another clause provided that, should payments be made to Philip by reason of P. M.'s bankruptcy or insolvency, or by operation of law or otherwise, such amounts were to be turned over to the lender bank. The agreement between the bank and Philip was supplemented by an agreement by P. M. that it would make no payments of principal indebtedness, present or future, to Philip until payment had been made in full to the bank of all present and future indebtedness. Identical subordination conditions were arranged on March 23, 1954 by the bank, the corporation and Hilda Frank in respect to Hilda's $50,000 debenture holdings. Hilda and Philip similarly subordinated the debentures acquired by them to two other banks, creditors of the taxpayer, on March 25, 1954 and May 2, 1957, respectively.[7] In 1958, the Franks entered into an agreement with P. M. whereby the due date for the repayment of the debentures was extended for three years. On the basis of these facts, particularly the small equity capitalization, the extensions and the subordination agreements, the Tax Court held that the bonds owned by Philip and Hilda Frank did not constitute true indebtedness and entered decisions for the Commissioner. We conclude that the result reached by the Tax Court should be affirmed.

Despite the Tax Court's insistence that this is a case of "thin capitalization", it is far from clear that P. M.'s capitalization was "thin". The inadequate capitalization test has a number of variations with regard to computation of the debt-capitalization ratio and the significance of a computed ratio as it applies to various types of business.[8] Where, as here, the taxpayer is a finance company, a business in which sizable amounts of borrowed capital are customary,[9] the ratio of debt to capitalization would not appear to be significantly high.[10] The case at bar presents those problems inherent in a situation where the sole or principal stockholder and his wife [11] hold evidence of unconditional debt issued by their corporation. Many decisions have found this factor to be persuasive evi-

---

6. The indebtedness then was $90,000.

7. There is no evidence in the record that the bonds issued in 1957 and held by various persons other than Frank and his wife were subordinated.

8. Compare American Law Institute, Income Tax Problems of Corporations and Shareholders 58–63, 400–423 (Report of Working Views of a Study by the American Law Institute Staff and American Bar Association Section of Taxation Liaison Committee 1958), with Goldstein, Corporate Indebtedness to Shareholders: "Thin Capitalization" and Related Problems, 16 Tax L.Rev. 1, 18–21 (1960), and Note, 55 Colum.L.Rev. 1054, 1063–1065 (1955).

9. In Jaeger Auto Finance Co. v. Nelson, 191 F.Supp. 693 (E.D.Wis.1961), the court found the thin capitalization rationale unpersuasive inasmuch as the taxpayer corporation was a finance company.

10. If, as counsel for the taxpayer asserted below, the total equity was in round figures $20,000, $30,000, and $50,000, respectively, at the end of the taxable years in question, and if non-shareholder debt (other than that held by the wife, see note 12, infra) is excluded, as the ALI Report of Working Views suggests, the petitioner's ratios for 1955, 1956, and 1957 would be approximately 7:1, 4.5:1, and 3:1.

11. Under the circumstances presented in the case at bar, Hilda Frank, who, as we have stated, was the secretary of the corporation and wife of Philip Frank, cannot be considered an outside lender. In substance, the amount advanced to the corporation by the Franks for the debentures came from but one source, the family controlling the corporation. Zephyr Mills, Inc., 18 TCM 794, 799 (1959); aff'd per curiam, 279 F.2d 494 (3 Cir. 1960). See also Hoguet Real Estate Corp., 30 T.C. 580, 599–600 (1960).

dence that debt in form is not indebtedness for purpose of income tax.[12] These decisions possess merit. To the sole shareholder-creditor it may make little difference, taxation aside, whether his investment be labeled "debt" rather than "stock". Complete control of the corporation will enable him to render nugatory the absolute language of any instrument of indebtedness. Nonetheless, while these considerations have caused the courts to examine the shareholder-creditor relationship with great care, the decisions [13] in most instances have required some further indication that sole or pro-rata shareholder "debt" is in reality equity rather than indebtedness.[14] Such indicia are present in the case at bar.

The burden of proving the reality of the indebtedness rests on the petitioner. White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172 (1938); John Wanamaker Philadelphia v. Commissioner, 139 F.2d 644, 646 (3 Cir. 1943). We think that the taxpayer cannot carry the burden imposed in the face of the subordination agreements. These agreements are incompatible with the taxpayer's assertions that the debentures evidenced indebtedness in the taxable years in question. While as a general rule it may be true that "debt is still debt despite subordination", Kraft Foods Co. v. Commissioner, 232 F.2d 118, 125–126 (2 Cir.1956), it is necessary to draw the line at some point. The subordination agreements in the case at bar were "complete" and not "inchoate".[15] The complete subordination effected by these agreements not only tends to wipe out a most significant characteristic of the creditor-debtor relationship, the right to

12. See Gilbert v. Commissioner, 248 F.2d 399, 407, 409–410 (2 Cir. 1957), on remand, 17 TCM 29, aff'd 262 F.2d 512 (2 Cir. 1958), cert. denied, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959); Prudence Securities Corp. v. Commissioner, 135 F.2d 340, 341 (2 Cir. 1943); Gooding Amusement Co., 23 T.C. 408, 418–419 (1954), aff'd, 236 F.2d 159 (6 Cir. 1956), cert. denied, 352 U.S. 1031, 77 S.Ct. 595, 1 L.Ed.2d 599 (1957); Edward T. Janeway, 2 T.C. 197, 202–203 (1943), aff'd, 147 F.2d 602 (2 Cir. 1945); Gloucester Ice & Cold Storage Co., 19 TCM 1015, 1020 (1960), rev'd, 298 F.2d 183 (1 Cir. 1962).

13. E.g., compare Brake & Electric Sales Corp. v. United States, 287 F.2d 426 (1 Cir. 1961), with Gloucester Ice & Cold Storage Co. v. Commissioner, 298 F.2d 183 (1 Cir. 1962); compare Gregg Co. of Del. v. Commissioner, 239 F.2d 498 (2 Cir. 1956), cert. denied, 353 U.S. 946, 77 S.Ct. 825, 1 L.Ed.2d 856 (1957), with Kraft Food: Co. v. Commissioner, 232 F.2d 118 (2 Cir. 1956); compare Wilbur Security Co. v. Commissioner, 279 F.2d 657 (9 Cir. 1960), with Miller's Estate v. Commissioner, 239 F.2d 729 (9 Cir. 1956).

14. These indicia may be divided roughly into two categories. The first embraces such significant factors as the inadequacy of the equity capital in respect to corporate purposes and the use to which the advances are put. These factors may preclude a finding of indebtedness though the instrument itself contains classic debt provisions. The other group of factors includes lack of definite maturity date, presence of voting rights, payments being made conditional and similar incidents, and is related more directly to the characteristics of indebtedness. Such factors may appear on the face of the instrument and "hybrid securities" are created thereby: e. g., securities possessing characteristics of both debt and stock. The classic example of some decades ago was the participating operation certificate, the POC, no longer in style. See In re Hawkeye Oil Co., 19 F.2d 151 (D.Del. 1927). But hybrid provisions frequently are found in the actual practices of the parties or are embodied in agreements that do not find reflection on the face of the instrument of indebtedness, as in the case at bar. The effects of "hybridization" come into play whether the securities are held by sole or pro-rata stockholders or by "outside creditors". See ALI Report of Working Views, p. 429. However, hybridization factors possess greater significance when the lender is a pro-rata stockholder than when he is an "outsider". For example, such a factor as an indefinite extension of a maturity date could be deemed to be coincidental where advances by an "outside lender" were involved, but coincidence might seem to be an insufficient explanation where the advances were made by a pro-rata stockholder.

15. See Calligar, Subordination Agreements, 70 Yale L.J. 376, 377–378 (1961).

share with general creditors in the assets in the event of dissolution or liquidation, John Wanamaker Philadelphia v. Commissioner, 139 F.2d 644, 647 (3 Cir.1943), but it also destroys another basic attribute of creditor status: i. e., the power to demand payment at a fixed maturity date.[16] The repayment condition imposed by the banks has rendered this right, expressly granted by the debentures, nonexistent. Although contingent obligations generally have been held to be inconsistent with "indebtedness" as employed in Section 163(a),[17] the nature of the condition precedent here imposed, repayment of all present and future bank loans, is particularly significant. The record indicates, and all parties agree, that the bank loans were indispensible to P. M.'s ability to function. Moreover, the arrangements for repayment of the loans and the high loan levels at the end of each of the taxable years in issue strengthen the inference that the borrowings from the banks would continue as long as the taxpayer remained in business. Such a course would have been in accordance with the custom of finance companies. One must conclude therefrom that the Franks' debentures would not be subject to payment for an indefinite period of time, a period that very likely would be coextensive with the life of petitioner's business. See Beaver Pipe Tools, Inc. v. Carey, 139 F.Supp. 470 (N.D.Ohio 1955), aff'd, 240 F.2d 843 (6 Cir.), cert. denied, 353 U.S. 958, 77 S.Ct. 864, 1 L.Ed.2d 909 (1957).

To put it bluntly, it seems to us that the petitioner has not sustained the burden imposed on it. The money advanced by the Franks in substance was placed at the disposal of the business on a permanent basis. It seems to us that this money constituted risk capital, as it did

to the Tax Court. The debentures held by Philip and Hilda Frank in our view do not reflect indebtedness within the meaning of Section 163(a) of the Internal Revenue Code. See Commissioner of Internal Revenue v. Schmoll Fils Associated, 110 F.2d 611 (2 Cir.1940); Beaver Pipe Tools, Inc. v. Carey, supra.

The decisions of the Tax Court will be affirmed.

---

16. Compare Farley Realty Corp. v. Commissioner, 279 F.2d 701, 704–705 (2 Cir. 1960), and Jewel Tea Co. v. United States, 90 F.2d 451, 112 A.L.R. 182 (2 Cir. 1937), with Commissioner of Internal Revenue v. H. P. Hood & Sons, 141 F.2d 467, 470 (1 Cir. 1944), and Commissioner of Internal Revenue v. O. P. P. Holding Co., 76 F.2d 11 (2 Cir. 1935).

17. E. g., Autenreith v. Commissioner, 115 F.2d 856, 858 (3 Cir. 1940); see Gilbert v. Commissioner, 248 F.2d 399, 402 (2 Cir. 1957). See ALI Report of Working Views 429.