**McSORLEY'S, INC., Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 7289.**

United States Court of Appeals
Tenth Circuit.

Oct. 31, 1963.

William P. Johnson, Denver, Colo. (Rothgerber, Appel & Powers, Denver, Colo., on the brief), for appellant.

Alec A. Pandaleon, Atty., Dept. of Justice (John B. Jones, Jr., Acting Asst. Atty. Gen., Meyer Rothwacks, Harry Baum and Richard J. Heiman, Attys.,

Dept. of Justice, and Lawrence M. Henry, U. S. Atty., of counsel, on the brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is a typical "thin corporation" case. The question is whether payments by a corporation to holders of its debenture notes are interest and for federal income tax purposes deductible under § 163(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 163(a). The District Director of Internal Revenue ruled that the payments were dividends rather than interest and assessed a deficiency which the corporation paid and sued to recover. The trial court sustained the Director and dismissed the action.

Plaintiff-appellant McSorley's, Inc., herein referred to as taxpayer, is a Colorado corporation organized by seven individuals to build and rent apartments. The organizers contributed $16,750.80 for common stock. Construction costs of about $200,000 were met by advances from an individual stockholder, by a bank construction loan guaranteed by two stockholders and by a loan from a non-stockholder. Negotiations for permanent financing disclosed that the taxpayer could not obtain as large a first mortgage loan as had been expected and that a second mortgage loan would carry 12% interest. The result was that to pay off the construction loans the taxpayer made a $75,000 first mortgage and issued debenture notes to the stockholders in the ratio of $4.00 of notes to $1.00 of common stock.[1] No debenture notes were offered or issued to, or held by, non-stockholders.

The debenture notes were unambiguous obligations to pay the face amount at maturity with interest payable semi-annually.[2] The debenture notes were carried as debts on the records of the taxpayer. The uncontroverted testimony was that the contributions to common stock represented the amounts of risk capital that the organizers were willing to contribute to the venture and the debenture notes represented loans to the taxpayer.

The debenture notes were made subordinate to all other indebtedness of the taxpayer, whether such indebtedness was secured or unsecured and whether it was existing when the notes were issued or arose thereafter. The resolution authorizing the issuance of the debenture notes provided that no interest or principal on the notes was to be paid if the taxpayer was in default in the payment of either principal or interest on any other corporate indebtedness. Upon liquidation the noteholders would be paid only after all other creditors had been paid.

The question of whether payments by a corporation to its stockholders are deductible interest within the meaning of § 163(a) of the Internal Revenue Code of 1954[3] presents a question of fact, the answer to which depends on whether the true relationship between the parties is that of debtor-creditor or corporation-stockholder. The trial court found that the equity capital contributed for shares of stock was inadequate for the reasonable needs of the corporation; that the debts of the corporation rose to more than eleven times the amount of capital stock; that the amounts paid for the notes went to start the business as they were used for construction expenditures and to pay off other indebtedness; that the corporate income was in-

1. Originally the debenture notes were issued in the amount of $67,003.20. Later, additional contributions of $2,615.20 were made to common stock and $10,460.80 to debenture notes. The 4 to 1 ratio was changed insignificantly when two stockholders disposed of their interests and an eighth individual joined the corporation.

2. The original debenture notes matured in 1966 and bore 4% interest. In 1960 new notes were exchanged for the original notes. The new notes matured in 1970 and carried 6% interest. Through oversight, interest was paid annually for the first two years rather than semi-annually.

3. 26 U.S.C. § 163(a).

sufficient to pay the debenture notes at maturity; that no provision was made for the creation of a fund from which the debenture notes could be paid at maturity; and that the "owners of the corporation, both in their capacities as stockholders and note holders bore the risk of the business venture, since their return, in effect and substance, depended on its success." On the basis of such findings the court concluded that the debenture notes represented equity capital and that the deductions on account of interest paid on the notes were not proper.

The taxpayer has the burden of demonstrating that the deductions on account of interest come within the purview of § 163(a).[4] The substance rather than the form of the transaction is controlling.[5] Each case turns on its own facts.[6]

An analysis of the numerous "thin corporation" cases discloses a recognition of many indicia of both debt and equity capital, none of which are controlling in every situation. The taxpayer emphasizes the intent of the corporation in the issuance of the debenture notes and the intent of taxpayers in purchasing those notes;[7] and the fact that the notes were conventional unambiguous debt instruments[8] providing for certainty of payment of a fixed sum on a fixed date.[9]

Recognizing that intent of the corporation and of those who contribute financial support to it are important and that the ratio of debt to equity capital is not decisive, the subjective expressions of intent must be weighed against the facts which support contrary inferences.[10] Among such facts are the identity of interests between stockholders and noteholders[11] and the proportionate holding of stock and notes;[12] the fact that the proceeds from the notes were used to supply capital assets in that they were used to complete construction and pay off other indebtedness;[13] the subordination of the notes to all other indebtedness of the taxpayer;[14] and the assumption of the risks of the venture by the noteholders.[15]

Our decision in Bowersock Mills & Power Co. v. Commissioner, 10 Cir., 172 F.2d 904, is not controlling here. There, emphasis was laid on the fact that prior to the pertinent transactions the parties stood on the basis of debtor and creditor with no disposition on the part of the creditor to become an investor in the corporation.[16] Bowersock itself recognizes that "every case turns on its own facts."[17]

A review of the entire record discloses that substantial evidence sustains the findings of the trial court and that the inferences which that court drew from the evidence are reasonable. Neither a choice between two permissible

4. Charter Wire, Inc., v. United States, 7 Cir., 309 F.2d 878, 880, certiorari denied 372 U.S. 965, 83 S.Ct. 1090, 10 L.Ed.2d 129.

5. Brake & Electric Sales Corporation v. United States, 1 Cir., 287 F.2d 426, 427; P. M. Finance Corporation v. Commissioner, 3 Cir., 302 F.2d 786, 789.

6. Bowersock Mills & Power Co. v. Commissioner, 10 Cir., 172 F.2d 904, 907.

7. See Bowersock Mills & Power Co. v. Commissioner, supra, 172 F.2d p. 907.

8. See Kraft Foods Company v. Commissioner, 2 Cir., 232 F.2d 118, 126–127.

9. See Bowersock Mills & Power Co. v. Commissioner, 10 Cir., 172 F.2d 904, 907.

10. Rowan v. United States, 5 Cir., 219 F.2d 51, 55.

11. Wachovia Bank and Trust Company v. United States, 4 Cir., 288 F.2d 750, 756.

12. Charter Wire, Inc., v. United States, 7 Cir., 309 F.2d 878, 880, certiorari denied 372 U.S. 965, 83 S.Ct. 1090, 10 L. Ed.2d 129.

13. See Rowan v. United States, 5 Cir., 219 F.2d 51, 55.

14. P. M. Finance Corporation v. Commissioner, 3 Cir., 302 F.2d 786, 789–790.

15. Commissioner v. Meridian & Thirteenth Realty Co., 7 Cir., 132 F.2d 182, 186.

16. See discussion of Bowersock decision in Crawford Drug Stores v. United States, 10 Cir., 220 F.2d 292, 296– 297.

17. 172 F.2d 907.

903

views of the weight of the evidence [18] nor a choice between conflicting reasonable inferences from the evidence [19] is clearly erroneous. The taxpayer has failed to sustain the burden of proving that the payments in question are deductible as interest under § 163(a).

' Affirmed.

18. United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 179, 180, 94 L.Ed. 150.

19. Continental Petroleum Co. v. United States, 10 Cir., 87 F.2d 91, 95, certiorari denied 300 U.S. 679, 57 S.Ct. 670, 81 L. Ed. 883; Walling v. Rutherford Food Corporation, 10 Cir., 156 F.2d 513, 517, affirmed and modified 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772.