**FIN HAY REALTY COMPANY,**
**Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 847–64.**

United States District Court
D. New Jersey.
Dec. 13, 1966.

Herbert L. Zuckerman, Newark, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., by Allen Schwait, Atty., Tax Div., Dept. of Justice, for defendant.

**FINDINGS OF FACT**
**AND**
**CONCLUSIONS OF LAW**

WORTENDYKE, District Judge:

This is a corporate taxpayer's action for refund, with interest, of Federal income taxes paid upon alleged deficiency

assessments for the calendar years 1961 and 1962. The deficiency assessments resulted from a disallowance of expenses claimed as interest.

This Court has jurisdiction of the subject matter under 28 U.S.C. § 1346(a) (1) and over the parties. The statutory conditions precedent to the institution of the action have been complied with.

The payments received by the corporate taxpayer, upon which the taxpayer claimed allowance for interest paid during the tax years, were held to have been contributions to taxpayer's capital and not bona fide loans.

The facts were stipulated, and I find as follows:

1. The plaintiff is a New Jersey corporation which was organized in 1934 for purposes of acquiring and holding real estate for rental.

2. At its formation, stock was issued in equal amounts to Frank L. Finlaw and J. Louis Hay in consideration of payment of $10,000 from each.

3. On February 16, 1934, the two stockholders advanced to the plaintiff $15,000 a piece.

4. On March 1, 1934, plaintiff purchased a 24-family apartment building located at 214–216 Wainwright Street, Newark, New Jersey, for $39,000 in cash.

5. On April 30, 1934, Finlaw and Hay advanced to the plaintiff $35,000.

6. On May 1, 1934, the plaintiff purchased two 33-family brick apartment buildings at 241 and 249 South Arlington Avenue in East Orange, New Jersey, for $175,000 plus adjustments, of which $100,000 was paid through a purchase-money mortgage with Hoover Investment Company, and the balance from the cash advanced to the plaintiff by Finlaw and Hay.

7. The Wainwright and Arlington properties were the plaintiff's only income-producing assets.

8. On January 6, 1938, Finlaw advanced to the plaintiff $2,000 and on April 29, 1939, Hay also advanced to the plaintiff $2,000.

9. In 1939, the plaintiff purchased equipment (stokers and refrigerators) in the amount of $6,488.

10. On December 31, 1940, the two stockholders advanced to the plaintiff $1,000 each.

11. Sometime in 1940, the plaintiff purchased additional equipment in the amount of $2,014.58.

12. A summary of the advances made to the plaintiff by the stockholders, with the capital expenditures which followed the payments, is as follows:

| Amount Paid | Date | Expenditure | Date |
|---|---|---|---|
| $ 30,000 | Feb. 16, 1934 | $ 39,000 | Mar. 1, 1934 |
| 70,000 | Apr. 30, 1934 | 75,000 | May 1, 1934 |
| 4,000 | Jan. 6, 1938 and Apr. 29, 1939 | 6,488 | 1939 |
| 2,000 | Dec. 31, 1940 | 2,014.58 | 1940 |
| $106,000.00 | | $122,502.58 | |

13. Notes calling for interest to be paid at 6% annually were issued to the stockholders. The corporate books of account reflected the alleged notes as "Notes Payable-Officers", and interest on

the advances was recorded as paid and deducted in each year since 1934.

14. The "notes" which were issued to the shareholders were unsecured demand notes and were secondary to the mortgages placed on the plaintiff's property.

15. No attempt was made to retire the notes by a sinking fund or other retirement provision.

16. Demand for repayment was never made by Finlaw or Hay. The only demands for repayment were by Hay's estate in 1951 and by the successors to Finlaw's interests in 1962 and 1963.

17. The plaintiff's Federal income tax returns for the years 1959 and 1960 were audited by Revenue Agent Michael Curtis, who, after concluding his audit on March 27, 1962, determined that the interest expense deductions attributable to the "notes" were not properly taken and should be disallowed.

18. The demand by the successors of Finlaw for the repayment of the "notes" in 1962 and 1963 was made shortly after the disallowance of the interest deduction.

19. Finlaw and Hay did not intend to have the amounts of money advanced to the plaintiff returned to them within a reasonable time.

20. The cash flow of the plaintiff did not permit the repayment of the amounts advanced out of earnings within a reasonable time after the amounts were advanced.

21. The amounts advanced to the plaintiff by its stockholders were made to purchase the plaintiff's assets necessary for its operation.

22. The amounts advanced to the plaintiff by its stockholders were placed at the risk of the plaintiff's business.

23. The plaintiff's original shareholders advanced money to the plaintiff in the same proportions; and they had a common interest in the amounts so advanced.

24. The real value of assets for purposes of computing the debt-to-equity ratio is the price at the time of sale to the plaintiff.

25. The plaintiff's debt of $200,000 is to be compared to its admitted equity of $20,000 to produce a 10:1 ratio of debt to equity.

26. The plaintiff timely filed Federal income tax returns for the years ended December 31, 1961 and December 31, 1962 with the District Director of Internal Revenue at Newark, New Jersey, and paid income taxes on the amounts reported on the respective returns. It deducted as interest expense the sums of $3,000 and $2,910 respectively for the years 1961 and 1962.

27. On or about March 2, 1964, the District Director assessed against the plaintiff additional taxes and interest of $1,680 for the year ended December 31, 1961 and $1,561.38 for the year ended December 31, 1962, by reason of the disallowance of these interest expenses. On or about March 2, 1964, the plaintiff paid to the District Director on account of such assessment the sum of $1,670.28 and $1,548.45. On March 12, 1964, the plaintiff filed, with the District Director of Internal Revenue, Claims for Refund (Form 843) for the years ended December 31, 1961 and December 31, 1962.

28. No action was taken by the defendant for six months on these refund claims.

The question here is whether the advances to plaintiff by the two stockholders were contributions to capital, or bona fide loans entitling the plaintiff to deduct the interest paid or accrued during the taxable years under consideration. It is noted that, though there are

many cases in this general area which construe the kind of statutory indebtedness necessary to entitle one to make an interest expense deduction, there appears to be no single rule, principle or test that is controlling or decisive of the question. It must rather be decided upon a case-by-case factual analysis of the true nature of the undertaking and the intent of the parties.[1] It is substance, rather than form, which governs. Weller v. C. I. R., 270 F.2d 294, 297 (3rd Cir. 1959) cert. den. 364 U.S. 908, 81 S.Ct. 269, 5 L.Ed.2d 223 (1960).

The Internal Revenue Code of 1954, 26 U.S.C. § 163(a), provides: "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." The term 'interest on indebtedness' as used in this statutory section means " '* * * compensation for the use or forebearance of money.' " Carpenter v. C. I. R., 322 F.2d 733, 735 (3rd Cir. 1963) cert. den. 375 U.S. 992, 84 S.Ct. 631, 11 L.Ed.2d 478 (1964) citing Deputy v. Du Pont, 308 U.S. 488, 498, 60 S.Ct. 363, 84 L.Ed. 416 (1940). The taxpayer has the burden of proving " * * * the reality of the indebtedness * * * " i. e., that the deductions here in question were within the purview of the statutory provision relied upon. See P. M. Finance Corporation v. C. I. R., 302 F.2d 786, 789 (3rd Cir. 1962), citing White v. United States, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172 (1938).

In the case at bar, practically all of the facts are either stipulated or disclosed in and by exhibits in evidence. This, of course, does not make the issue any less factual in nature. There was also limited oral testimony relevant to the sole question which the Court is called upon to answer. However, the intent of the taxpayer's only two stockholders must be inferred from the totality of the evidence in the light of the purpose of the statute and the burden cast upon the taxpayer to bring itself within the privilege of the deduction.

The evidence is persuasive that Frank L. Finlaw and J. Louis Hay organized the taxpayer New Jersey corporation for the purpose of conducting an enterprise for the acquisition, ownership and maintenance of rent-producing real estate. Each of these two stockholders subscribed and paid for an equal number of shares of common stock; each paying the sum of $10,000 for capital stock of the corporation. The receipt of these payments for stock subscriptions created a capital fund for the corporation of $20,000 with which to commence its business. The business could not function until the corporation had acquired some real estate from which rental income could commence to accrue.

On March 1, 1934, the same year in which the corporation was organized, it acquired a 24-family apartment building located at 214–216 Wainwright Street, Newark, New Jersey, for $39,000 in cash. While the evidence discloses that the price paid for that real estate acquisition was low, the corporation's available cash holdings, out of which payment for the property was made, totalled only $20,000. This purchase created a capital deficit of $19,000. I must assume that the real estate was purchased only after negotiations between the buyer-corporation and the prospective seller, and that when the purchase price was agreed upon, the capital deficit became apparent. I am forced to the conclusion, therefore, that the threatened deficit was obviated by the advance, on February 16, 1934, to the purchasing corporation, by each of its stockholders, of $15,000. While the imminent deficit was only $19,000, there must have been incidental expenses connected with the organization of the corporation and the examination and closing of title. In conformity with the practice established by the two stockholders, of making equal contributions to the corporation, the aggregate supplemental advance of $30,000, received by the corporation from them on February 16, 1934, enabled the corporation to acquire the

---

1. See generally McSorley's, Inc. v. United States, 323 F.2d 900 (10th Cir. 1963).

real estate for $39,000 in cash and still have a cash capital balance of approximately $11,000. However, the acquisition of a single real estate holding evidently failed to complete the taxpayer's program of real estate acquisition. Accordingly, on May 1, 1934 taxpayer purchased two 33-family apartment buildings at 241–249 South Arlington Avenue, East Orange, New Jersey, for $175,000 plus closing adjustments. Of this price, the taxpayer secured $100,000 through a purchase-money mortgage to Hoover Investment Company, and paid the difference of approximately $75,000 in cash. Obviously, and assuming that the corporation incurred no expense and collected no rental income between its acquisition of the Wainwright Street property and that in East Orange, it had in its cash capital account no more than $11,000. On April 30, 1934, the day before it took title to the East Orange properties, each of plaintiff's two stockholders advanced to the corporation $35,000. Thus, on the day it acquired its East Orange properties, the plaintiff had in hand, in its capital cash account, approximately $81,000 which was ample to permit its second real estate acquisition without borrowing beyond the purchase-money mortgage previously referred to. The Newark and the East Orange real estate holdings thus acquired by the plaintiff became its only income-producing assets.

There was testimony that, in 1934, funds available for investment in multi-family residence real estate were difficult to obtain. This situation was doubtlessly recognized by the corporation in paying for the Wainwright Street property, and the high proportion of the purchase price for the East Orange properties, in cash. With the acquisition of these real estate holdings, the corporation stood to benefit from their appreciation in value and the constant yield of rental income, less maintenance costs and mortgage amortization payments. The stockholders had completed their principal capital investments; and the evidence fails to disclose any reason why they should invest in alleged loans to the corporation. However, on January 6, 1938, Finlaw advanced $2,000 to the corporation, and on April 29, 1939 Hay advanced an equal amount to the corporation. These advances were apparently used by the corporation to purchase equipment for its real estate holdings, consisting of furnace stokers and refrigerators, involving a total expense of $6,488. The evidence further discloses that on December 31, 1940, each of the stockholders advanced $1,000 to the corporation. Thus, a total of $6,000 was advanced between January 6, 1938 and December 31, 1940. A further capital expense incurred by the corporation for additional equipment in 1940 amounted to $2,014.38. The two stockholders, during the period 1934–1940 advanced to the corporation a total of $126,000 [2] and the corporation paid out of its capital, during the same period, $122,502.58.

On the occasion of each advance, after the initial capital contributions, a demand promissory note, bearing interest at 6%, was issued by the corporation to the advancing stockholder, and the corporate books carried these respective notes as "Notes Payable-Officers". The books also recorded the payment of interest by the corporation to each of the stockholders on account of each note. No arrangement was made by the corporation for the retirement of the notes, nor was any demand for payment of the notes made until that in 1951, by the estate of Hay, who had died, and in 1962 and 1963 by the successors to Finlaw.

The corporate income tax returns, for the years following the issuance of the notes, claimed deductions for interest thereon and were not questioned by the Internal Revenue Service through the return for the year 1958. Each of such interest payments received by the individual shareholders from the corporation was reported on his respective personal income tax return as interest income. The corporate returns for the years 1959 and 1960, which made similar claims for

---

2. $20,000 represented the initial capital stock investment.

deduction, were audited and the interest expense deductions attributable to the notes were disallowed. Thereupon, the appropriate refund claims were made, and the present action was timely instituted.

The criteria by which to determine whether the advances here were contributions to capital or bona fide loans, are numerous. It follows, therefore, that the true nature of a given transaction may possibly be determined by the application of only some of the factors and circumstances to be considered. Proper classification of the instrument under which the advances are made is sometimes difficult. In the final analysis, the deduction allowed is for 'interest on indebtedness'. Where no indebtedness exists, no deduction is permitted. "Interest on an indebtedness presupposes a debtor-creditor relationship. The incidents of this relationship have been stated to be an *unqualified obligation* to pay a sum certain at a reasonably close fixed maturity date along with a fixed percentage in interest *payable regardless of the debtor's income or lack thereof.*" (Emphasis supplied) Farley Realty Corporation v. C. I. R., 279 F.2d 701, 704 (2nd Cir. 1960) citing Gilbert v. C. I. R., 248 F.2d 399, 402 (2nd Cir. 1957).

Absence of evidence that the stockholders intended to have the questioned advances repaid to them within a reasonable time is significant. No provision for the retirement of the alleged indebtedness was made, and no payment of the notes was demanded until Hay died 17 years later and his estate sold out his interest in the corporation, and up to 30 years after the Finlaw payments were made, when his successors in interest sought payment on the notes. The successors to the Finlaw interest deferred their request for payment until after the audit of the plaintiff's 1959 and 1960 returns and the disallowance of the interest expense claimed for each of those years. Finally, the respective advances made to the corporation by the stockholders were in direct proportion to their equity ownership in the corporation.

In the light of the criteria recognized in Charter Wire, Inc. v. United States, 309 F.2d 878 (7th Cir. 1962); P. M. Finance Corp. v. C. I. R., supra; Mullin Building Corp. v. C. I. R., 9 T.C. 350, aff'd 167 F.2d 1001 (3rd Cir. 1948); and Gooding Amusement Co. v. C. I. R., 236 F.2d 159 (6th Cir. 1956), I am not persuaded by the evidence that the holders of taxpayer's notes considered themselves to be true creditors. Where, as here, the organizers of a new business arbitrarily designate as loans the major portion of funds that they have advanced in order to get the business established and under way, there is a solid basis for inference that the aggregate amount is a contribution to capital and was placed at the risk of the business. Mullin Building Corp. v. C. I. R., supra. Similarly, funds later paid by stockholders to a corporation to purchase equipment necessary to operate the business are likewise deemed to be capital contributions. Messenger Publishing Co. v. C. I. R., P.H.Memo T.C. par. 47, 241, aff'd 168 F.2d 903 (3rd Cir. 1948). Under this permissive inference, the $2,000 payments in 1938 and 1939 and the $1,000 payments in 1940 were evidently made to purchase capital assets which could not have been purchased from the earnings of the corporation. Since no outside financing could be obtained by the corporation for that purpose, the stockholders had the choice of advancing the cost at the risk of the business, or of enforcing their alleged existing loans and putting the corporation out of business.

Although the plaintiff's income tax return for 1935, the first full year of its operations, reported an income, less expenses and plus depreciation, of $6,-153.44, its amortization payment on the purchase-money mortgage covering the East Orange properties left the corporation with a deficit of $3,846.56. This deficit was made up on its balance sheet by a reduction of cash in the amount of $1,465.56 and the assumption of an account payable of $2,400 representing the accrual of its officers' salaries for the year. There was a capital stock tax of

$19.00. The unlikelihood of the stock-holders' expectations that their alleged loans would be repaid in a reasonable time thereafter is negatived by the fact that the corporation paid no dividends for 1935 and owed its stockholder-officers their current salaries. In 1936, plaintiff's return showed a cash flow of $5,-632.65; but it was able to do so because it did not amortize its mortgage, but instead eliminated the account payable to its officers. Obviously, taxpayer's indebtedness, if any, to its stockholders could not have been paid before the mortgage amortization. Again, in 1937, plaintiff's cash flow was only $5,192.78, which was insufficient to meet the amortization requirements, and its cash account was reduced in order to enable it to do so. The stockholders' alleged advances still remained unpaid. In 1938, 1939 and 1940, plaintiff's cash flow enabled it to reduce its mortgage and leave a cash surplus. The consequent increase of cash on hand was not applied on account of the stockholders' alleged loans; but the corporation obtained more money from its stockholders for the purchase of capital equipment. Thus, although the plaintiff was in no financial position, for at least three full years after its organization, to repay any portion of its stockholders' advances out of earnings, nevertheless when it might have been able to make such repayment, it did not do so, nor did either of the stockholders require it. They chose, rather, to leave their contributions with the plaintiff in expectation of redemption out of surplus, or future earnings, and then only if the capital of the corporation would not be impaired by the withdrawals. Such is an appropriate inference from the factual evidence presented in this case. Moreover, if the advances by the stockholders were loans, they were completely without security. This fact also is persuasive that they were not bona fide loans by the stockholders.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter of, and parties to, this action.

2. The burden is on the plaintiff to establish that the advances to the plaintiff by its shareholders were loans and not contributions to capital.

3. The absence of an intention to seek, or anticipation of, repayment within a reasonable period after the advances is persuasive that the advances were not loans.

4. Absence of a maturity date on evidence of indebtedness, absence of retirement provisions for the debt, and absence of a demand for repayment within a reasonable period after the advances is indicative that the advances were not loans.

5. Advances made to the corporation by its organizers, to purchase the only income-producing assets of the corporation, are placed at the risk of the corporation's business and are therefore contributions to its capital.

6. Advances made to the corporation, with expectation of redemption only out of surplus or out of future earnings, and then only if the capital of the corporation would not be impaired by the withdrawal, are contributions to capital.

7. Where advances are made to the corporation by its shareholders in substantially the same percentages as their admitted equity interests, the advances are considered contributions to capital.

8. Where advances are made by shareholders to their corporation without security for such advances, and where the advances are secondary to prior secured loans, the advances of the shareholders are considered contributions to capital.

9. The intention of the alleged creditor at the time the advances are made is determinative of the intention to treat such advances as bona fide loans.

10. The substance of the transaction rather than its form controls its treatment as debt or contributions to capital.

11. The plaintiff has not met its burden of establishing that the funds advanced to it by its shareholders represented indebtedness.

12. The amounts advanced by its stockholders to the plaintiff were contri-

butions to its capital and not bona fide loans.

13. The Commissioner of Internal Revenue properly disallowed the interest deductions attributable to contributions to plaintiff's capital in the years 1961 and 1962.

14. The defendant is entitled to judgment dismissing the complaint and the action.