WASTE DISPOSAL, INC. (formerly known as ROSELLE STAVOLA, INC.), Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Waste Disposal, Inc. v. Commissioner
Docket No. 8009-72.
United States Tax Court
T.C. Memo 1975-261; 1975 Tax Ct. Memo LEXIS 115; 34 T.C.M. (CCH) 1118; T.C.M. (RIA) 750261; August 11, 1975, Filed Harvey R. Zeller and Edwin Fradkin, for the petitioner. William M. Gross, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in the Federal income tax of petitioner, Waste Disposal, Inc., as follows: 1967
$ 773.64
1968
5.62
1969
20,904.12
We are to decide if advances made to petitioner by its shareholders in the years 1965 through 1969 in exchange for unsecured promissory notes payable on demand were loans, entitling petitioner to deduct amounts paid to the shareholders *116 as interest on the advances during the years in issue, or if the advances were in fact contributions to petitioner's capital. FINDINGS OF FACT Certain facts have been stipulated and, as stipulated, are found. Petitioner is a corporation organized under the laws of the State of New Jersey. Its principal place of business was in Neptune City, New Jersey, when the petition herein was filed. [1]
Petitioner filed U.S. corporation income tax returns for the years in issue with the District Director of Internal Revenue, Newark, New Jersey. Petitioner reported its income and expenses in accordance with the cash receipts and disbursements method of accounting. Petitioner was organized in January 1965 and engaged in the refuse disposal business. Its original shareholders, [2] their respective holdings, and the amount of stated capital contributed by each are set forth below: Michael Stavola
50 shares
$2,000
A. J. Lippman
8 shares
320
Arthur Roselle
8 shares
320
Crescent Roselle
8 shares
320
Joseph Roselle
8 shares
320
Louis Roselle
8 shares
320
Peter Roselle
8 shares
320
Walter H. Jones
2 shares
80
100 shares
$4,000
*117 Lippman and Jones sold their shares of stock in the corporation in 1970. In the following year Michael Stavola sold his shares to his sons, W.H. and J. M. Stavola. In August 1973 all of the shares of petitioner's stock then outstanding were acquired by the Service Company of America, Incorporated, a publicly held corporation. Set forth below are petitioner's balance sheets for each of the years from 1965 through 1971: December 31, 1965
ASSETS
Current Assets: Cash
$ 7,477.01
Fixed Assets: [3]
Total Fixed Assets
$134,980.86
Reserve for Depreciation
8,995.89
Net Fixed Assets
125,984.97
Other Assets
26,915.25
Prepaid Expenses
3,224.37
Total Assets
$163,601.60
LIABILITIES AND CAPITAL
Current Liabilities: Notes Payable: Shareholders
$ 89,839.81
Others
81,634.92
Capital: Capital Stock
$ 4,000.00
Loss
11,873.13
Total Deficit
(7,873.13)
Total Liabilities and Capital
$163,601.60
*118 December 31, 1966
ASSETS
Current Assets: Cash
$ 24,539.33
Fixed Assets: Total Fixed Assets
$381,633.00
Reserve for Depreciation
114,424.42
Net Fixed Assets
267,208.58
Other Assets
29,231.31
Total Assets
$320,979.22
LIABILITIES AND CAPITAL
Current Liabilities
$ 76,911.92
Other Liabilities: Notes Payable--
Shareholders
181,271.32
Others
50,000.00
Capital: Capital Stock
4,000.00
Reserve for Investment Credit
4,289.07
Surplus
4,506.91
Total Liabilities and Capital
$320,979.22
December 31, 1967
ASSETS
Current Assets: Cash
$ 65,665.34
Fixed Assets: Total Fixed Assets
$672,301.85
Reserve for Depreciation
226,934.95
Net Fixed Assets
445,366.90
Other Assets
67,390.33
Total Assets
$578,422.57
LIABILITIES AND CAPITAL
Current Liabilities
$150,443.76
Other Liabilities: Notes Payable--
Shareholders
246,271.32
Others [4]
164,656.87
Capital: Capital Stock
4,000.00
Reserve for Investment Credit
10,816.98
Surplus
2,233.64
Total Liabilities and Capital
$578,422.57
*119 December 31, 1968
ASSETS
Current Assets: Cash
$ 54,967.59
Fixed Assets: Total Fixed Assets
$736,623.32
Reserve for Depreciation
392,468.21
Net Fixed Assets
344,155.11
Other Assets
84,607.97
Total Assets
$483,730.67
LIABILITIES AND CAPITAL
Current Liabilities
$125,619.40
Other Liabilities: Shareholders
286,271.32
Others
55,000.00
Capital: Capital Stock
4,000.00
Reserve for Investment Credit
9,674.08
Surplus
3,165.87
Total Liabilities and Capital
$483,730.67
December 31, 1969
ASSETS
Current Assets: Cash
$ 28,258.26
Fixed Assets: Total Fixed Assets
$906,864.73
Reserve for Depreciation
439,266.60
Net Fixed Assets
467,598.13
Other Assets
56,898.12
Total Assets
$552,754.51
LIABILITIES AND CAPITAL
Current Liabilities
$ 98,934.65
Other Liabilities: Notes Payable--
Shareholders
293,771.32
Others
97,614.22
Capital: Capital Stock
4,000.00
Reserve for Investment Credit
13,007.54
Surplus
45,426.78
Total Liabilities and Capital
$552,754.51
December 31, 1970
ASSETS
Current Assets: Cash
$ 31,557.62
Fixed Assets: Total Fixed Assets
$1,007,795.03
Reserve for Depreciation
586,679.34
Net Fixed Assets
421,115.69
Other Assets
33,283.24
Total Assets
$485,956.55
LIABILITIES AND CAPITAL
Current Liabilities
$144,211.63
Other Liabilities: Notes Payable--
Shareholders
244,630.71
Others
21,640.61
Capital: Capital Stock
4,000.00
Reserve for Investment Credit
12,974.01
Surplus
58,499.59
Total Liabilities and Capital
$485,956.55
*120 December 31, 1971
ASSETS
Current Assets: Cash
$103,988.51
Fixed Assets: Total Fixed Assets
$1,177,928.37
Reserve for Depreciation
621,952.36
Net Fixed Assets
555,976.01
Other Assets
95,125.35
Total Assets
$755,089.87
LIABILITIES AND CAPITAL
Current Liabilities
$324,277.01
Other Liabilities: Notes Payable--
Shareholders
194,630.71
Others
150,681.19
Capital: Capital Stock
4,000.00
Surplus
81,500.96
Total Liabilities and Capital
$755,089.87
The notes entered on the balance sheets as being payable to petitioner's shareholders were unsecured demand notes issued in exchange for the following advances: Amount
Cumulative Shareholder
Advanced [1]
Total
Date
Michael Stavola
$ 39,893.21
2/5/65
9,000.00
8/31/65
6,000.00
11/26/65
15,000.00
12/20/65
$ 69,893.21
45,690.90
1/13/66
115,584.11
37,500.00
4/27/67
(10,000.00)
11/3/67
143,084.11
(10,000.00)
4/13/ 68
133,084.11
15,000.00
7/15/69
148,084.11
(15,000.00)
7/31/70
(10,000.00)
8/15/70
(15,000.00)
9/19/70
108,084.11
(108,084.11)
1971
0
A. J. Lippman
$ 7,310.61
1/13/66
$ 7,310.61
6,000.00
4/27/67
13,310.61
(13,310.61)
9/19/70
0
Arthur Roselle
$ 3,989.32
1/14/65
$ 3,989.32
7,300.00
1/13/66
11,289.32
6,000.00
4/27/67
17,289.32
Crescent Roselle
$ 3,989.32
1/14/65
$ 3,989.32
7,400.00
1/13/66
11,389.32
6,000.00
4/27/67
17,389.32 50,000.00
12/26/68
67,389.32
(50,000.00)
2/28/69
50,000.00
12/8/69
67,389.32
(50,000.00)
3/6/70
17,389.32
Joseph Roselle
$ 3,989.32
1/14/65
$ 3,989.32
7,300.00
1/13/66
11,289.32
6,000.00
4/27/67
17,289.32
Louis Roselle
$ 3,989.32
1/14/65
$ 3,989.32
7,300.00
1/13/66
11,289.32
6,000.00
4/27/67
17,289.32
Peter Roselle
$ 3,989.32
1/14/65
$ 3,989.32
7,300.00
1/13/66
11,289.32
6,000.00
4/27/67
17,289.32
Walter H. Jones
$ 1,830.00
1/13/66
$ 1,830.00
1,500.00
4/27/67
3,330.00
(3,330.00)
9/19/70
0
W. H. Stavola
$54,042.06
1971
$ 54,042.06
J. M. Stavola
$54,042.05
1971
$ 54,042.05
*121 The funds advanced to petitioner by its shareholders in exchange for the notes were used in large part to finance petitioner's purchase of the assets necessary for the conduct of its business. The notes issued to A. J. Lippman and Walter H. Jones in exchange for the funds which they advanced to petitioner were fully satisfied in 1970 when these two shareholders sold their shares of stock in the corporation. When Michael Stavola sold his shares to his sons, the notes payable to him were discharged with funds which the sons advanced to petitioner and in exchange for which unsecured demand notes payable to the sons were issued. Subsequent to 1971 all of the demand notes which petitioner had issued to the shareholders were repaid. The promissory notes which petitioner issued to its shareholders made no provision for the payment of interest. At regular meetings of petitioner's directors and shareholders, however, resolutions were adopted by the shareholders on the recommendation of the directors, *122 authorizing payments at the rate of six percent for 1966, 1967 and 1968, and at the rate of eight and one-half percent for 1969. During the years in issue payments in the following amounts were made pursuant to those resolutions: Shareholder
Year
Amount
Michael J. Stavola
1967
$ 9,688.64
1968
16,157.59
1969
11,630.90
A. J. Lippman
1967
438.64
1968
1,507.28
1969
1,131.40
Arthur Roselle
1967
737.20
1968
1,984.72
1969
1,469.59
Crescent Roselle
1967
743.20
1968
2,246.72
1969
2,353.09
Joseph Roselle
1967
737.20
1968
1,984.72
1969
1,469.59
Louis Roselle
1967
737.20
1968
1,984.72
1969
1,469.59
Peter Roselle
1967
737.20
1968
1,984.72
1969
1,469.59
Walter H. Jones
1967
109.80
1968
377.10
1969
283.05
These payments totaled $13,929.08 in 1967, $28,227.57 in 1968, and $21,276.80 in 1969. Petitioner claimed deductions in these amounts on its U.S. corporation income tax returns filed for the years in which the payments were made. [5] The Commissioner determined that the payments were not deductible. Statutory notice of the resulting deficiencies was dated July 28, 1972. *123 OPINION Subsequent to its incorporation in January 1965, petitioner invested heavily in fixed assets. These investments were financed in large part with funds advanced by petitioner's shareholders. Only a small portion of these advances was designated a contribution to petitioner's capital. In exchange for most of the advances the shareholders received unsecured promissory notes, payable on demand. At issue in this litigation is whether the advances made in exchange for promissory notes in the years 1965 through 1969 were loans in substance as well as in form. Only if we decide that they were in substance loans will petitioner be entitled to deduct the amounts which it paid to its shareholders during the years in issue as interest on the advances. Section 163(a), Internal Revenue Code of 1954. [6] The burden is on petitioner to prove that in making the advances the shareholders intended that they be repaid in all events in the reasonably proximate future. Fin Hay Realty Company v. United States,261 F.Supp. 823, 826-828 (D.N.J. 1966), affd. 398 F.2d 694 (3d Cir. 1968). *124 In exchange for the advances in issue, the shareholders received notes payable on demand. After 1965 these notes were carried on the books of petitioner as a noncurrent liability. The advances were in large part used to finance petitioner's investment in fixed assets during the early years of its existence. These facts suggest that in making the advances in issue, the shareholders intended to commit their funds to the corporation for an indefinite period. Isidor Dobkin,15 T.C. 31, 33 (1950), affd. per curiam 192 F.2d 392 (2d Cir. 1951). [7] For further evidence of the shareholder's intention in making the advances we will consider the circumstances under which payments on the notes were made. [8]
Advances of $50,000 each made by Crescent Roselle on December 26, 1968 and December 8, 1969, were repaid in two and three months' time, respectively. The prompt repayment of these two advances suffices to convince us that they were in substance loans. Byerlite Corporation v. Williams,286 F.2d 285, 291 (6th Cir. 1960). *125 Aside from the repayment of these two advances we note that from 1965 through 1967 petitioner's purported indebtedness to its shareholders increased steadily, reaching $246,271.32 by the end of 1967. In the three years that followed, the purported indebtedness was significantly reduced by the repayment (net) to Michael Stavola of $35,000 of the $143,084.11 allegedly owed to him. On September 19, 1970, the notes held by A. J. Lippman and Walter H. Jones were fully discharged in connection with the liquidation by these two shareholders of their investments in petitioner. [9] When Michael Stavola sold his shares to his sons in 1971, the notes which he held at the time [10] were fully discharged with funds which petitioner obtained from the sons in exchange for unsecured demand notes. The effect of these payments to Lippman, Jones and Stavola was to bring the shareholders' individual shares of petitioner's purported indebtedness to them more nearly *126 into proportion with their respective interests in petitioner's equity. This, considered in conjunction with the form of the notes, petitioner's bookkeeping, and the fact that the advances were used in large part to finance investments in fixed assets, indicates that the advances, other than those made by Crescent Roselle on December 26, 1968, and December 8, 1969, were intended as a capital investment. Charter Wire, Inc. v. United States,309 F.2d 878, 880-881 (7th Cir. 1962); Fin Hay Realty Company v. United States,398 F.2d 694, 696 (3d Cir. 1968); Tyler v. Tomlinson,414 F.2d 844, 848-849 (5th Cir. 1969); A. R. Lantz Co. v. United States,283 F. Supp. 164, 166, 169 (C.D. Cal. 1968), affd. 424 F.2d 1330 (9th Cir. 1970). [11]
Authentic loan contracts generally provide that the borrower pay the lender interest in consideration of the loan. The notes *127 which petitioner issued to its shareholders in exchange for the advances in issue contained no provisions for the payment of interest. The payments which were purportedly interest on the advances, were made pursuant to shareholder resolutions adopted on the recommendation of petitioner's directors. In this respect the payments more nearly resemble a return on a capital investment than interest on a loan. Berkowitz v. United States,411 F.2d 818, 821 (5th Cir. 1969). Petitioner's shareholders did not require security for the advances in issue. Their failure to do so is not necessarily inconsistent with petitioner's contention that the advances were loans; but it does indicate a willingness on the part of the shareholders to give priority over their claims to the claims of petitioner's unrelated creditors. [12] It therefore constitutes additional evidence that the unsecured advances were in fact capital contributions. Wood Preserving Corporation of Baltimore v. United States,347 F.2d 117, 119 (4th Cir. 1965); Tyler v. Tomlinson,supra at 848. *128 On review of the record we hold that petitioner has sustained its burden of proof only as to the advances made by Crescent Roselle on December 26, 1968, and December 8, 1969. The other advances in issue we hold to have been contributions to petitioner's capital. Decision will be entered under Rule 155.
Footnotes
1. Petitioner was originally styled "Roselle Stavola, Inc." Its name was changed to "Waste Disposal, Inc." on or about January 10, 1972.↩
2. During the years in issue the original shareholders of the corporation were also its directors.↩
3. Throughout these Findings of Fact and Opinion the term "fixed assets" is used with reference to petitioner's real estate holdings and to equipment held by petitioner for use in its operations.↩
4. In 1967 and subsequent years, petitioner's liabilities to parties other than its shareholders included secured equipment loans obtained from the Union County Trust Company.↩
1. Set forth in parentheses are the amounts which petitioner paid to its shareholders during the years 1965 through 1971 in reduction of the balances outstanding on the demand notes.↩
5. Petitioner reported a loss of $2,273.27 for 1967, taxable income of $932.23 for 1968, and taxable income of $46,829.17 for 1969. In each of the years in issue, petitioner was entitled to an investment credit under sec. 38, I.R.C. 1954↩.
6. SEC. 163. INTEREST. (a) General Rule.--There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.↩
7. Plumb, "The Federal Income Tax Significance of Corporate Debt: A Critical Analysis and a Proposal," 26 Tax L. Rev. 369, 418-419↩. 8. Plumb, supra↩ at 490-492.
9. The notes payable to A. J. Lippman totaled $13,310.61 in amount; those payable to Walter H. Jones totaled $3,330.00. ↩
10. The face amount of the notes payable to Michael Stavola when he sold his shares to his sons was $108,084.11.↩
11. We note at this juncture that although the record discloses that all of the advances in issue were eventually repaid, no evidence was introduced pertaining to the circumstances surrounding payments made on the notes after 1971.↩
12. We note in this connection that petitioner gave security for certain bank loans which it procured to finance purchases of equipment.↩