**BRAKE & ELECTRIC SALES CORPO·RATION, Plaintiff, Appellant,**

v.

**UNITED STATES of America, Defendant, Appellee.**

**No. 5753.**

United States Court of Appeals First Circuit.

Heard Jan. 4, 1961.

Decided March 9, 1961.

George B. Lourie, Boston, Mass., with whom Arnold R. Cutler, John P. Martin and Daniel D. Levenson, Boston, Mass., were on the brief, for appellant.

Charles B. E. Freeman, Atty., Dept. of Justice, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., Elliot L. Richardson, U. S. Atty., and James C. Heigham, Asst. U. S. Atty., Boston, Mass., were on the brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts entered July 21, 1960 dismissing plaintiff-appellant's complaint.

The Commissioner of Internal Revenue disallowed deductions taken by plaintiff for the tax years 1953, 1954 and 1955 of amounts claimed as interest paid on outstanding notes. Plaintiff paid the deficiencies determined by the Commissioner and then made claims for refunds which were disallowed. The plaintiff thereafter brought this suit to recover the alleged overpayments.

Plaintiff, Brake & Electric Sales Corporation, was organized in December 1949 to take over the business of Brake & Electric Sales Company, a distributor and wholesaler of brakes, wheels, axles, electrical systems and other parts for heavy automotive equipment. The unincorporated business was owned and operated by Murray A. Brown, as individual proprietor.

The plaintiff after its incorporation issued 200 shares of $100 par value common stock to its sole stockholder, Murray

A. Brown, for $20,000 cash. At all times since the formation of the plaintiff, Brown has been sole stockholder as well as president, treasurer and a director.

On January 3, 1950 plaintiff took over the business of the individual proprietorship. It took over all the tangible and intangible assets of the proprietorship with the exceptions of some cash and the real estate. Plaintiff has continued to occupy the real estate under a lease from Brown who retained ownership. The formal transfer of assets from Brown's ownership to the corporation was made on March 1, 1950 after the closing of the proprietorship's books and completion of an inventory. The assets transferred to plaintiff had a book value of $116,955.20. Plaintiff assumed liabilities of $26,955.20, leaving a book net worth of $90,000 for the assets transferred. The transfer to the plaintiff also included the good will and franchises of the proprietorship, which were not carried as assets on the books. Brown testified that the fair value of the franchises was $157,000 and that the going-concern value of the business as transferred to the plaintiff was $300,000. During 1949 the proprietorship had sales of $250,908.37 and profits before taxes of $53,000. Since 1950 the business of the plaintiff has been increasingly successful. Sales in 1959 totalled $862,490.89. Plaintiff has met all its obligations without borrowing and has discounted all its bills.

On March 1, 1950 plaintiff gave Brown a promissory note for $90,000 due on March 1, 1955 with interest at 4% per annum in return for the property formally transferred to plaintiff. In December 1952 the $90,000 note was cancelled and replaced by three notes differing from the original note only in the amount on the face; two for $6,000 and one for $78,000. A $6,000 note was endorsed to each of Brown's two minor children, purportedly as a gift, and delivered to Brown's attorney, Mr. Davis. Davis acknowledged by letter to each of the children that he had received the note and was holding it for the child as attorney.

On March 1, 1955, when the three notes came due, they were extended for another five years by agreement between plaintiff and the holders, Brown individually and Davis as custodian of the children's notes. On March 1, 1960 the notes were similarly extended for one year.

Interest on these notes has been paid regularly when due in the amount of $3,600 annually. Plaintiff annually deducted this amount on its income tax return as interest paid on an indebtedness.

Plaintiff contended in the district court that the note transaction should be regarded as a genuine loan, as it purported to be, and that Brown had deliberately limited his risk capital investment to $20,000 and had advanced the rest of his property as a loan for his own protection, since in the event of failure of the enterprise, he would, as to the $90,000 evidenced by the note, be a creditor entitled to share in the assets on an equal footing with other creditors. The Government contended that Brown really made a capital investment of the property in the corporation, giving the transaction the form of a loan so that he might be able to receive a distribution of the profits in the form of interest which would be deductible by plaintiff, although in reality these payments to Brown constituted dividends.

The district court concluded that the "notes involved herein represent an equity investment in the corporation, subject to the risks of the corporate venture, of property essential to its operations, that the notes were never intended to be enforced according to their terms, and that the interest payments made were not true interest payments deductible under the Internal Revenue Code but rather payments in the nature of dividends." [185 F.Supp 4.] In reaching this conclusion the district court looked to the substance of the transaction. See Gilbert v. C. I. R., 2 Cir., 262 F.2d 512, certiorari denied 1959, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030. It noted that one of the factors frequently occurring in cases involving this type of issue, disproportionate debt-equity ratio, was not

present in the instant case. In the court's view, however, there were other factors which indicated the capital investment nature of the transaction.

The district court mentioned six factors present in the instant case in weighing the situation to determine the realities of the transaction. The six mentioned are: (1) that the assets transferred to the corporation as part of the transaction were assets essential to the conduct of the business; [1] (2) that Brown was at all times in control of the situation respecting the business and the decision of enforcing the notes; (3) the notes were regularly extended when they fell due; (4) Brown's testimony that he would never have demanded payment if the corporation would be required by such demand to raise the cash by borrowing from another source; (5) that under the realities of the situation in 1950 Brown could not realistically have expected that in five years the plaintiff would be able to pay $90,000 in cash at least without putting itself into a disadvantageous financial position, a circumstance which Brown as sole stockholder would certainly want to avoid; (6) at no time since the formation of plaintiff has it paid a dividend, nor have the directors even discussed the possibility of declaring a dividend, even though the business has been expanding profitably during the entire period and in each year had a substantial earned. surplus.

Plaintiff alleges that the above subsidiary findings which the district court made were irrelevant and immaterial to the main issue, that these findings were not warranted by the facts and that the general finding of the district court was based upon improper standards. Plaintiff urges that in determining the reality of the transaction, there is no legal principle which requires the negativing of each of the six factors mentioned by the district court. Plaintiff further contends that the district court has erroneously set up these six factors as standards by which to measure the transaction.

These contentions rest, in our view, upon a misinterpretation of the district court's opinion. The district court recognized that the case presented essentially a factual question concerning the real intention of the parties as to the 1950 transaction. See Gooding Amusement Co. v. Commissioner of Internal Revenue, 6 Cir., 1956, 236 F.2d 159, certiorari denied 1957, 352 U.S. 1031, 77 S.Ct. 595, 1 L.Ed.2d 599. The factors cited by the district court are relevant considerations in determining the reality·of the situation, e. g., that the notes were extended when due in spite of the great prosperity of the corporation is evidence that it was not intended in 1950 that the alleged obligation be enforced when it became due. Although plaintiff has various explanations for the actions taken, the combination of evidentiary facts pointing toward risk-capital investment is still strong and we cannot say that the district court was clearly erroneous.

We do not believe that the district court exalted any of these evidentiary factors to a rigid standard which must

1. The district court said: "The $90,000 transaction represented the transfer to the corporation of substantially all of the assets shown on the books of the individual proprietorship, except for cash and the real estate. They were assets essential to the conduct of the business and, as Brown testified, it could not be carried on without them. A transfer of this character seems rather to be a permanent investment in the risk of the business rather than the temporary loan which the parties represented it to be." From the bill of sale it is seen that the major tangible items were equipment and machinery, furnishings and inventory. We think that the nature of the assets, and their continued necessity to the running of the business are relevant considerations in determining the intent of the parties in making the transfer, to be taken together with the other evidence of lack of realistic expectation of payment in cash when due according to the face of the note, and that the notes were extended when they became due. The factors of the nature of the assets and their importance to the operation of the business would not be very strong evidence of intent to make a risk-capital investment in every case but they are some evidence to be taken together with the other circumstances of the case.

be met in order to constitute a transaction an "indebtedness" for tax purposes. The opinion gives no indication that any one of the mentioned considerations was, by itself, determinative of the reality of the transaction, nor that the district court regarded any of the considered factors as more than support for the ultimate finding, by way of inference, of the dividend nature of the disputed payments. The entire record indicates to us that the district court properly weighed all the evidence.

Judgment will be entered affirming the judgment of the district court.