**GLOUCESTER ICE & COLD STORAGE CO., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 5816.**

United States Court of Appeals
First Circuit.

Jan. 24, 1962.

Franklin N. Flaschner, Boston, Mass., with whom Harry Bergson, Jr., and John Connorton, Boston, Mass., were on brief, for petitioner.

George F. Lynch, Atty., Dept. of Justice, Washington, D. C., with whom Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

This petition to review a decision of the Tax Court of the United States presents the question whether payments of $7,000 each year for the years 1952 to 1955, inclusive, made by the petitioner to the holders of its twenty year seven per cent debenture bonds were deductible payments of interest or non-deductible distributions of dividends.

The petitioner was organized as a corporation under the laws of Massachusetts in November 1938 to engage in the City of Gloucester in the business of manufac-

turing and selling ice and providing freezing and cold storage service primarily to the fishing fleet. Its authorized capital consisted of 10,000 shares of no par value common stock and 1,000 shares of $100 par value cumulative preferred stock.

Upon its organization the petitioner through the efforts of its president, John Ryan, obtained a lease for approximately 11 years renewable for 20 years of a new, fully equipped and ready to operate cold storage warehouse and freezing plant built during the depression under the WPA program for the benefit of the fishing industry of the City of Gloucester at a cost of $1,050,000. All of the petitioner's common stock, which had an attributed value of 10 cents a share, was originally issued to John Ryan in consideration for his services in obtaining the lease, but he immediately donated 3,-000 shares to the petitioner which it held as treasury stock. The petitioner commenced operations on January 1, 1939, and thereafter from time to time up to November 14, 1940, it issued 500 shares of its cumulative preferred stock giving each subscriber as a bonus 3 shares of common out of its treasury for each share of preferred.

At a meeting in September 1943 the petitioner's directors voted to call its outstanding preferred stock for redemption at par plus accrued interest, to issue twenty year 7% debenture bonds [1] in the face amount of $100,000, and to acquire a majority of the outstanding stock of a competitor, Cape Pond Ice Company, a Massachusetts corporation organized in 1902, which was engaged in the business of harvesting, storing, crushing and selling natural ice to the Gloucester fishing fleet. In chronological order the votes in material detail were (1) to issue the bonds described above and to establish a sinking fund to provide for their retirement at maturity, (2) to call all outstanding preferred stock for redemption

giving each holder thereof the privilege of taking in payment debentures of equal face value, the privilege to be exercised on or before October 15, 1943, and to sell any debentures unsold on that date for not less than par, (4) to purchase a majority of the shares of Cape Pond Ice Company and (5) to authorize the treasurer to borrow enough money to consummate the purchase. All of the authorized debenture bonds were issued, of which $16,000 in face value (16%), were sold to individuals who had not previously owned preferred stock, and the proceeds of the sale of the debentures plus the proceeds of a $65,000 bank loan (which was fully paid within a year), were used to purchase 366 of the 382 outstanding shares of the common stock of the Cape Pond Ice Company for $136,350.50. The petitioner has consistently paid 7% per annum on its debenture bonds. As of November 30, 1959, the sinking fund established for their retirement contained a balance of $68,181.40.

In each of the taxable years involved the petitioner deducted the $7,000 it paid to the holders of its debenture bonds as a payment of interest on indebtedness under § 23 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23 and § 163 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 163. The Commissioner disallowed the deductions on the ground that the payments constituted dividends within the meaning of § 115 and § 316(a) of the respective Codes. The Tax Court agreed with the Commissioner. It conceded that the bonds "satisfied all of the formal requirements to make the instruments effective as debt obligations," and that the "record establishes they were treated as debt obligations with interest payments made when due and appropriate accruals to a sinking fund to provide for their retirement at maturity." Nevertheless, purporting to look through form to substance, it held that the debenture holders had placed their money

[1]. Although the rate is stated on the face of the bonds as 7%, it is provided on the back of the bonds that the petitioner might pay only 4% if it failed in any year to earn enough to pay 7%. The 3% difference, however, was not foregone but only postponed and it was also cumulative.

at the risk of the business, and therefore in effect were stockholders so that the payments to them were dividends, because (1) the bonds were held in approximate proportion to the shares of stock, (2) the proceeds of the debenture issue were used to purchase a fixed asset, i. e., a majority of the stock of Cape Pond Ice Company, (3) the bonds were issued simultaneously with the call of the preferred stock for redemption and (4) the debt-to-equity ratio was disproportionately high, being 15 to 1. We do not agree with the Tax Court.

The debenture bonds certainly are evidences of debt in form as the Tax Court found. They are also clear evidence of debt in their substantive provisions as well, for by their terms they impose an unqualified obligation to pay interest quarterly on fixed dates at a fixed rate, they impose an unqualified obligation to pay a fixed principal amount on a day certain and within a reasonable time, and they confer upon their holders no voting rights or voice in the management of the obligor under any circumstances whatever. Neither is there any evidence, or indeed any suggestion, of some *soto voce* understanding that interest would be paid on the bonds only out of income or that the principal amount would not or would not be likely to be paid at maturity as in Brake & Electric Sales Corp. v. United States, 287 F.2d 426 (C.A. 1, 1961). Moreover, there is no evidence that the petitioner was in such a shaky financial condition or that its business prospects were so dark that in reason the parties to the transaction could not have expected the petitioner to meet its obligations on its bonds as they fell due. On the contrary, after a loss in round figures of $11,500 for the first year of its operations, the petitioner showed a profit before federal taxes of approximately $4,000 in 1940 and of approximately the same amount in 1941, a profit of approximately $18,000 in 1942, and in 1943, the year the bonds were issued, a profit of nearly $28,000.[2]

In short, the debentures are not hybrid securities having some of the characteristics of bonds and some of the characteristics of preferred stock as in Haffenreffer Brewing Co. v. Commissioner, 116 F.2d 465 (C.A. 1, 1940); Commissioner of Internal Revenue v. H. P. Hood & Sons, 141 F.2d 467 (C.A. 1, 1944); Talbot Mills v. Commissioner, 146 F.2d 809 (C.A. 1, 1944), aff'd sub nom. John Kelley Co. v. Commissioner, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278 (1946); and in many cases from other circuits which might be cited. In both form and substance the debentures are out and out evidence of the petitioner's indebtedness. Nor is there anything to suggest that the bonds were a sham in that they did not embody the true intention of the parties, or that they did not or in reason could not have been understood to obligate the petitioner strictly according to their terms. Compare Brake & Electric Sales Corp. v. United States, supra.

There can be no doubt that the debentures are evidences of indebtedness in the hands of the non-stockholders who purchased $15,500[3] worth of them and they are equally so in the hands of those who also owned stock in the petitioner, for their classification depends upon an analysis of their provisions, not upon who owns them. No intrinsic tax consequences flow from a stockholder's loan of money to his corporation. See Rowan v. United States, 219 F.2d 51, 55 (C.A. 5, 1955).

There being no element of subterfuge or artifice to escape tax consequences, the bonds speak for themselves. And they speak in clear and unmistakable terms of indebtedness. Therefore there are no disputed questions of fact relevant to the issue to be decided. Inferences cannot avail against patent facts. This is a clear case for application of the principles set out by Chief Judge Magruder

---

2. It showed even greater profits in succeeding years.

3. One purchaser of debentures in the face amount of $500 owned 15 shares of petitioner's common stock.

in his dissent in Talbot Mills v. Commissioner, 146 F.2d 809, 812 et seq. (C.A. 1, 1944).

Judgment will be entered reversing the decision of the Tax Court of the United States and remanding the case to that Court for further consistent proceedings.