H. LESLIE BOWEN AND ESTHER L. BOWEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bowen v. Commissioner
Docket No. 9353-72.
United States Tax Court
T.C. Memo 1974-208; 1974 Tax Ct. Memo LEXIS 111; 33 T.C.M. (CCH) 932; T.C.M. (RIA) 74208; August 12, 1974, Filed. *111 X made a $20,000 advance to W corporation for which he received a promissory note. Y, co-equal shareholder with X in W corporation, made an identical advance. W corporation never paid any dividends to X or Y. Held, the $20,000 advance by X represented a contribution to capital. X and Y agreed to indemnify a surety company on a performance and labor bond for W corporation. X and Y also cosigned a loan from C bank to W corporation. After W corporation became insolvent, X expended funds pursuant to the bond and the loan agreements. Held, expenditures made by X are deductible as nonbusiness bad debts. Sec. 166, I.R.C. 1954. David C. Pierson, for the petitioners. Robert J. Murray, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency in petitioners' income tax for the taxable year 1969 in the amount of $1,732.14.The issues are: (1) Whether a $20,000 advance made by petitioner represented a bona fide loan or a contribution to capital; and (2) whether amounts paid under an indemnity agreement and a loan agreement are deductible under section 166[1] as business bad debts (ordinary loss) or nonbusiness bad debts (capital loss). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. H. Leslie Bowen (hereinafter referred to as petitioner) and Esther L. Bowen are husband and wife who were legal residents of Lincoln, Nebraska at the time the petition was filed. They filed their Federal income tax return for the year 1969 with the district director of internal revenue in Kansas *113 City, Missouri. Westcott-Bowen Construction Co. (hereinafter referred to as Westcott-Bowen or the Company) was incorporated under the laws of the State of Nebraska on September 9, 1949, and was engaged as a general contractor in the construction business. Lee W. Westcott (hereinafter referred to as Westcott) was president of the Company and petitioner was vice president. Both Westcott and petitioner were corporate directors. Petitioner was a full-time employee of the Company and held no other salaried position during 1961 and 1962. Petitioner's salaries for 1961, 1962 and 1963 were $10,600, $10,400 and $7,200, respectively. In 1963 Westcott-Bowen became insolvent as a result of which the assets were then liquidated. On March 26, 1969, Westcott-Bowen was dissolved for nonpayment of occupation taxes. The original capitalization of Westcott-Bowen was $5,000 of which $2,500 was contributed by petitioner and $2,500 by Westcott. As of 1960 Westcott and petitioner were co-equal shareholders in the Company, the capital stock acquired (including original capitalization) by each being as follows: Year
Amount 1949
$ 2,500.00
1950
10,000.00
1951
2,500.00
1952
5,000.00
1953
1,600.00
1954
3,400.00
1955
5,000.00
1960
4,000.00$0
Total
$34,000.00
*114 The contributions to capital made from 1949 through 1955, inclusive, and in 1960 were for the purpose of providing Westcott-Bowen with additional working capital. On August 2, 1961, petitioner and Westcott made advances of $20,000 each to Westcott-Bowen. Petitioner received a $20,000 promissory note that was made payable, after thirty-six (36) months, to himself or his wife. The note stated that interest was payable at the rate of six percent per annum from the date the note was signed. The note was signed on behalf of the Company by petitioner and Westcott in their capacities as officers. Westcott's advance to the Company was identical to the one made by petitioner. Westcott-Bowen paid petitioner $2,500 in 1963 and $6,599.97 in 1969 on the advance made in 1961. On August 11,1961, Westcott-Bowen obtained a performance bond and a labor and material payment bond from the Trinity Universal Insurance Company (hereinafter referred to as Trinity) in the amount of $1,154,826 for the construction of a building for Dorsey Laboratories in Lincoln, Nebraska.Westcott-Bowen was obligated to indemnify Trinity for any moneys which it expended pursuant to the terms of these bonds. Petitioner *115 and Westcott were also listed on the contracts individually as indemnitors. The contract provided that the indemnitors, as well as Westcott-Bowen, were liable to indemnify Trinity. As a result of the insolvency of Westcott-Bowen, Trinity fulfilled its obligations under the performance and payment bonds by paying $135,716.36 to subcontractors and materialmen to complete the construction of the Dorsey Laboratories. In 1969 petitioner paid Trinity $17,468.99 to indemnify it for funds expended under the performance and payment bonds. On September 28, 1962, the National Bank of Commerce Trust & Savings Association (hereinafter referred to as the Bank of Commerce) of Lincoln, Nebraska, approved a loan in the amount of $105,000 to Westcott-Bowen. The loan was evidenced by a promissory note which was signed by petitioner and Westcott in their capacities as corporate officers; and it was also signed by petitioner, Westcott and their respective wives individually. In 1964, after the Company became insolvent, petitioner paid $6,384.60 to the Bank of Commerce under the promissory note signed in 1962. The Bank of Commerce then assigned its rights against the estate of Westcott, at that *116 time deceased. In 1969, petitioner received $869.02 from Westcott-Bowen. No formal dividends were ever paid to either petitioner or Westcott. On the 1969 Federal joint income tax return petitioner claimed a miscellaneous deduction in the amount of $14,111.57, that amount allegedly consisting of the $20,000 advance less the payments received of $2,500 and $6,599.97. Petitioner contended that this balance "was determined to be completely worthless and is treated as a bad debt." Petitioner also deducted as long-term capital losses $16,599.97 and $6,384.60 for his payments to Trinity on the bonds and the Bank of Commerce loan, respectively. In a notice of deficiency dated September 26, 1972, respondent disallowed petitioner's deduction of $14,111.57 on the basis that the $20,000 advance made in 1961 represented a contribution to capital rather than a loan. Respondent also stated that, if the advance was determined to be a loan, it was a nonbusiness bad debt subject to deduction only as a capital loss. OPINION The first issue is whether the $20,000 advance made by the petitioner on August 2, 1961, should be classified as a loan or a contribution to capital. Section 166(a) *117 [2] provides for a deduction for any debt which becomes worthless within the taxable year. Petitioner contends that the $20,000 advance was a valid loan which became worthless in 1969. Petitioner does concede that the amount deducted on the 1969 joint Federal income tax return ($14,111.57) was incorrect and that he should be entitled only to a deduction, if any, in the amount of $10,900.03. Respondent contends that the $20,000 advance was a contribution to capital rather than a loan. Therefore, no debt was created and petitioner is entitled to no deduction for the amount of his loss. A determination of whether an advance made by a stockholder to a close corporation creates a true debtor-creditor relationship or actually represents a contribution of capital depends upon the particular facts of each case. John Kelly Co. v. Commissioner, 326 U.S. 521 (1946). The question has arisen taxwise in issues involving the proper treatment of unrecovered advances either as a bad debt or a contribution *118 to capital, see e.g., Road Materials, Inc. v. Commissioner, 407 F.2d 1121 (C.A. 4, 1969); and it has also arisen in issues involving a determination of whether a payment by a corporation designated as interest is deductible as such. See, e.g., Litton Business Systems, Inc., 61 T.C. 367 (1973). There is no one factor which clearly delineates whether an advance is a loan or a contribution to capital. We recognize, however, that a taxpayer should be entitled to commit so much of his resources to a venture as he desires in the form of debt or equity. J.S. Biritz Construction Co. v. Commissioner, 387 F.2d 451 (C.A. 8, 1967). After full consideration of all of the facts in this case, we hold that the $20,000 advance made by petitioner was in reality a contribution to capital. The only factor in favor of finding that the advance was a bona fide loan was the form in which it was made. Thus, the signing of a promissory note which provided for a fixed maturity date and for the payment of interest establishes some evidence that the parties intended the transaction to be a loan. The objective expression of intent as contained in such formal documentation, *119 however, cannot alone be controlling of the characterization given the transaction. A.R. Lantz Co. v. United States, 424 F.2d 1330 (C.A. 9, 1970). It must be determined whether the actions of petitioner and the Company comport with the economic reality of creating a debtor-creditor relationship. For the reasons discussed below, we hold that the economic reality failed to establish a true debtor-creditor relationship. Although the promissory note called for the payment of interest at the rate of six percent per annum, petitioner has presented no proof that any interest was ever paid on the $20,000 advance. The failure to pay interest on the advance as required by a note is a factor in determining whether the parties intended a true debtor-creditor relationship. See Covey Investment Co. v. United States, 377 F.2d 403 (C.A. 10, 1967). Furthermore, petitioner presented no evidence concerning the treatment accorded the advance by the Company. At the trial petitioner first testified that he did not know whether the Company had accrued interest on its books and then he testified it did. Even if we accept petitioner's inconsistent testimony on this point, *120 he presented no corporate records regarding how the books of the Company treated the advance or whether it did accrue interest. Such evidence would be necessary to determine the intention of the Company with regard to the advance. The failure of a party to produce evidence within his control, which if true would be favorable to him, gives rise to a presumption that if produced it would be unfavorable. Wichita Terminal Elevator Co., 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (C.A. 10, 1947). The failure to pay or accrue interest on the $20,000 advance militates against finding that a true debtor-creditor relationship existed. Petitioner's $20,000 advance was made in direct proportion to his interest as a shareholder in the Company. This raises a strong inference that the advance represented investment capital. Charter Wire, Inc. v. United States, 309 F.2d 878 (C.A. 7, 1962), certiorari denied 372 U.S. 965 (1963), and Family Group, Inc., 59 T.C. 660 (1973). This is especially true in this case, as the history of the Company shows that the $20,000 advances by Westcott and petitioner represented only one transaction *121 in a long series of advances and/or guarantees made on a co-equal basis. Westcott-Bowen never paid any formal dividends to either petitioner or Westcott, which is another factor militating against finding a true debtor-creditor relationship. Brake & Electric Sales Corporation v. United States, 287 F.2d 426 (C.A. 1, 1961), and Hoguet Real Estate Corporation, 30 T.C. 580 (1958). This factor leads to the inference that any subsequent repayments on the advance were merely substitutes for dividends that otherwise would have been paid to petitioner and Westcott. The cumulative effect of the factors noted above is that, although the parties went through the formalities of documenting that the advance was a loan, petitioner did not support this action by evidence of the substantive economic reality of the transaction. We therefore hold that the $20,000 advance by petitioner constituted a contribution to capital rather than a loan. Since we hold that petitioner's advance was a contribution to capital, we do not reach respondent's alternative argument that any loss realized is deductible only as a nonbusiness bad debt. The second issue is whether the amounts *122 paid by petitioner pursuant to the bond and loan agreements are business bad debts or nonbusiness bad debts. Section 166[3] allows an ordinary loss deduction for any debt that becomes worthless during the year provided it is not a nonbusiness bad debt. A nonbusiness bad debt is defined as any debt other than one created in connection with or incurred in the taxpayer's trade or business. *123 Petitioner contends that the payments made pursuant to the bond and loan agreements are deductible as losses on worthless debts incurred in connection with his trade or business. Respondent contends that neither the indemnification agreement nor the loan agreement were incurred in connection with petitioner's trade or business and that any losses arising from these items are not deductible as ordinary losses under section 166(a).
The construction business of Westcott-Bowen is not the trade or business of petitioner, its 50% shareholder and vice president. Burnet v. Clark, 287 U.S. 410 (1932). Petitioner's activities as vice president are considered to be a trade or business. George P. Weddle, 39 T.C. 493 (1962), affd. 325 F.2d 849 (C.A. 2, 1963). In order to be deductible as ordinary losses under section 166, however, the losses must arise in connection with the petitioner's trade or business as an employee and not in connection with Westcott-Bowen's construction business. In determining whether a loss is incurred in connection with a taxpayer's trade or business under section 166 the test applied is the dominant motive of the taxpayer *124 entering into or paying the debt. A significant motivation is not enough. United States v. Generes, 405 U.S. 93 (1972). In the Generes case the court held that the taxpayer was not entitled to a business bad debt deduction under section 166(a) at least partially because the only evidence in support of the taxpayer's position was his own self-serving testimony and the taxpayer's annual gross salary was only $12,000 as compared to his original investment of $38,900 plus his personal loans for the corporation. In this case the petitioner's salary was approximately $10,000 per year and his capital in the firm was $54,000. It seems unreasonable to believe that petitioner would have entered into an indemnification arrangement for over $1,000,000 and cosigned a loan for $105,000 merely to protect his annual salary. Furthermore, the only evidence offered by the petitioner was his own self-serving testimony. Under the authority of the Generes case we find that the transactions were entered into by petitioner primarily to protect his investment. We conclude and find that the petitioner's dominant motivation in entering into the indemnification agreement and cosigning *125 the loan was to protect his investments in Westcott-Bowen and that the protection of his income of salaries was only an incidental motivation. Accordingly, we hold that the losses suffered by petitioner in connection with the indemnification agreement and the loan resulted from nonbusiness bad debts are therefore deductible only as short-term capital losses under section 166(d). Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise indicated. ↩
2. SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly worthless debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. ↩
3. SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly worthless debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. * * * (d) Nonbusiness Debts. - (1) General rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness debt defined. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. ↩