THE J. F. STEVENHAGEN CO., et al., 1 Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent J. F. Stevenhagen Co. v. CommissionerDocket Nos. 2148-72, 2149-72 and 2150-72.United States Tax CourtT.C. Memo 1975-198; 1975 Tax Ct. Memo LEXIS 175; 34 T.C.M. (CCH) 852; T.C.M. (RIA) 750198; June 23, 1975, Filed John F. Stevenhagen and Wayne Breitenstine, for the petitioners. Larry L. Nameroff, for the respondent. IRWINMEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in the income taxes of petitioners as follows: TaxableDocketYear TaxpayerNo.EndedDeficiencyThe J. F. Stevenhagen Co.2148-7212-31-67$4,732.02John F. and Patricia12-31-673,382.33Stevenhagen2149-7212-31-686,703.87Jon-Way Developers, Inc.2150-723-31-681,765.873-31-692,161.00*176 The following issues are presented for our determination: in docket No. 2150-72, whether certain advances made to Jon-Way Developers, Inc. (Jon-Way) by its two shareholders or their solely-owned corporation constituted bona fide debt or contributions to capital; in docket No. 2149-72, whether certain advances by The J. F. Stevenhagen Company (JFS) to Jon-Way and interest payments thereon constituted constructive dividends to John F. Stevenhagen, JFS's sole shareholder; and in docket No. 2148-72, whether JFS is an accrual basis taxpayer for tax purposes with respect to interest income. This latter issue relates primarily to whether JFS is liable for the personal holding company tax under section 541 2 for 1967. If we determine that the advances constituted capital contributions rather than bona fide debt, then there is no section 541 tax issue. However, because the statutory notice apparently also reflects the omission of interest with respect to debt respondent is not contesting, we still must decide this third issue. FINDINGS OF FACT Some of the facts have been*177 stipulated and the stipulation of facts, together with the exhibits attached thereto, are found accordingly. The J. F. Stevenhagen Company and Jon-Way Developers, Inc., are corporations formed under the laws of the State of Ohio. At the time of the filing of their petitions herein, each corporation's principal office was located in Akron, Ohio. John F. Stevenhagen (Stevenhagen) and Patricia Stevenhagen are husband and wife who resided in Akron, Ohio, at the time of the filing of their petition herein. During the respective years in issue, JFS, Jon-Way and the Stevenhagens filed their income tax returns with the district director of internal revenue at Cleveland, Ohio. JFS is solely owned by Stevenhagen. Jon-Way is owned equally by Stevenhagen and Wayne Breitenstine (Breitenstine). Breitenstine is also the sole owner of a corporation known as Wayne Breitenstine Builders, Inc. (WBB). Jon-Way was incorporated on October 23, 1962, with the stated purpose of buying, selling and developing real estate. The initial capitalization was $500 of which Stevenhagen and Breitenstine each contributed $250 in return for 100 shares each. The 200 shares issued constituted all of the authorized*178 shares of the corporation. Following its incorporation Jon-Way acquired the following parcels of real estate: DateGrantorCost10-31-62Kepler$ 55,000.006-25-65Farris119,399.0012-21-66WBB25,535.0012-31-66JFS34,996.48 36-16-67Pearson12,000.008-21-67Sorrick59,000.009-12-67Andreff20,000.003-25-68Gilchrist-Munroe, Inc.180,000.00With respect to these acquisitions Jon-Way borrowed the following funds from lending institutions and granted mortgages as security therefor: Percentage LendingRate of InstitutionDateAmountInterestAkron Savings & Loan11-8-62$ 35,0006Akron Savings & Loan7-13-6586,0006First Federal Savings & Loan3-31-66146,0006-1/4 4Akron Savings & Loan3-6-6726,5006-1/2Akron Savings & Loan3-6-6724,0006-1/2Akron Savings & Loan5-30-67173,0006-1/4Akron Savings & Loan6-20-679,0006-1/2Akron Savings & Loan5-20-68150,0007-1/2Akron Savings & Loan6-30-68160,0007-1/2Akron Savings & Loan3-12-6980,0007-3/4*179 Of the above mortgages, the following have been satisfied: Mortgage DateSatisfied Date 4a11-8-622-25-657-13-655-4-703-6-67 ($26,500)1-3-673-6-67 ($24,000)10-31-676-20-675-4-70In each mortgage transaction Jon-Way executed a mortgage, a mortgage note and a subordination and assignment of lease agreement. In addition, financial statements of Jon-Way, Stevenhagen and Breitenstine were submitted to the lending institutions. Turning to the initial acquisition by Jon-Way, the purchase of the Kepler property in 1962, Jon-Way put up $18,000 and obtained a first mortgage from Akron Savings and Loan Company for $35,000 (see chart, supra). 5 To come up with the $18,000, Stevenhagen and Breitenstine each advanced Jon-Way $9,000. Prior to the advance of $9,000 by each shareholder, advances of $1,000 (two $500 advances each) were made by each shareholder. This was in addition to the $250 contributed by each shareholder at the time of incorporation. *180 On January 8, 1963, when Jon-Way's bank balance was $74.24, the two shareholders each advanced $2,500 to enable Jon-Way to pay engineering fees of $3,000 and six months' payments totaling $2,016 on the above-mentioned bank loan. On March 15, 1963, when Jon-Way's bank balance was $18.24, each shareholder advanced $500 to enable Jon-Way to issue checks in amounts of $50 and $500 for monies owed to the State of Ohio and for attorney's fees. On March 20, when the checkbook balance was $468.24, each shareholder advanced $300 to enable Jon-Way to pay engineering fees of $900. On July 29, 1963, when the checkbook balance was $171.42, each shareholder advanced $2,000 to enable Jon-Way to meet its mortgage obligations totaling $2,016, accountant's fees of $35 and excavating expenses of $500. On July 31 each shareholder advanced $1,000 to enable Jon-Way to pay excavating expenses of $2,000. On August 20, 1963, when the checkbook balance was $620.42, each shareholder advanced $3,500 to enable Jon-Way to pay excavating expenses of $2,400 and materials expense of $4,960.09. On September 5, 1963, when the checkbook balance was $252.44, each shareholder advanced $1,000 to enable Jon-Way*181 to pay engineering fees of $500 and materials expense of $934.32. On September 12, with the balance at $818.12, each shareholder advanced $2,000 to enable Jon-Way to pay excavating expenses of $2,870.40. On September 26, with the balance at $662.72, additional advances of $2,000 were made by each shareholder to enable Jon-Way to pay a grading expense of $925 and related expenses of $2,068.28. On October 8, 1963, when the checkbook balance was $1,637.51, each shareholder advanced $1,000 to enable Jon-Way to issue a check in the amount of $2,847 for electrical services. On October 31, with the balance at $46.66, each shareholder advanced $11,000 to enable Jon-Way to pay street paving expenses in the amount of $21,473.90. 6From November 8, 1962, through March 31, 1965, Stevenhagen and Breitenstine each advanced*182 Jon-Way amounts totaling $63,100. In addition, Breitenstine advanced an additional $9,000 on October 24, 1964, which was repaid on October 31, 1964. No documents were issued by Jon-Way during this period purporting to evidence the advances. Starting on November 21, 1963 Jon-Way began paying its two shareholders amounts in multiples of $1,600. These amounts, paid without interest, were treated as reductions to the outstanding balance of the amounts advanced. The payments in multiples of $1,600 were based upon the sale of lots owned and developed by Jon-Way to its shareholders who had the exclusive right to sell the developed lots. The average sale price of a lot to the shareholders was $3,200. When a sale was made the shareholder would pay Jon-Way $3,200. Upon receipt of the $3,200 Jon-Way would pay $1,600 to Akron Savings and Loan Company to release the lot from the mortgage. The other $1,600 would be paid back to the shareholder. As of March 31, 1965, the net balances of the amounts advanced were $3,050 to Breitenstine and $7,850 to Stevenhagen. On such date Jon-Way for the first time issued to JFS and Breitenstine documents purporting to be demand promissory notes. These documents*183 were in the amounts of $9,750 each with a stated interest rate of six percent. No advances were made by JFS, WBB, Stevenhagen or Breitenstine on this date. At no time was any security given for any of the advances by JFS, WBB, Stevenhagen or Breitenstine. On April 23, 1965, each shareholder advanced $1,000 to Jon-Way and on June 26, 1965, an additional $1,500 was advanced by each. Jon-Way did not issue promissory notes in respect of these advances. In June 1965 Jon-Way acquired the Farris property (see chart, supra) for $119,399. To finance the acquisition a mortgage was obtained from Akron Savings and Loan Company in the amount of $86,000 (with interest at six percent). The downpayment was covered by advances of $17,000 by each shareholder on June 30, 1965. On June 30 Jon-Way also issued to JFS and Breitenstine documents purporting to be demand promissory notes in the respective amounts of $12,800 and $11,200, with interest at five percent. On this date the two demand promissory notes so far issued to Breitenstine totaled $20,950. Breitenstine's net balance on the monies advanced also equalled $20,950. This amount includes the initial capital contribution of $250. The two*184 demand promissory notes issued by June 30 to JFS totaled $22,550. Stevenhagen's net balance with respect to the monies advanced also equalled $22,550. This amount also includes the initial capital contribution of $250. During the period July 17, 1965, through October 10, 1968, each shareholder (or his solely-owned corporation) advanced sums of money totaling $32,550 7 to Jon-Way. On each of the dates when funds were transferred, Jon-Way issued documents purporting to be demand promissory notes to the two shareholders (or their corporations) in the amounts of the advances. The amounts advanced ranged in amount from $100 on September 2, 1965, to $15,000 on January 24, 1968. *185 While each note issued had a stated interest rate of five or six percent, Jon-Way made no payments of this purported interest until the end of 1967. Jon-Way's books and records, kept on the accrual method, also did not reflect any accrual of this interest. Between March 31, 1965, and March 31, 1969, Jon-Way made payments of $1,600 to Breitenstine and payments of $6,400 (in multiples of $1,600) to Stevenhagen with respect to the advances. As of March 31 of 1966 through 1969, the net balances with respect to the advances were as follows: BreitenstineStevenhagen Date(& WBB)(& JFS)3-31-66$24,050$ 25,6503-31-6760,08559,5463-31-6881,53580,9963-31-6989,03588,496 For the taxable year ended March 31, 1968, Jon-Way deducted $10,480.50 as alleged interest with respect to the outstanding notes issued to Stevenhagen, Breitenstine or their corporations. Of this $10,480.50, $3,026.57 was with respect to the notes that are not contested by respondent. For the taxable year ended March 31, 1969, Jon-Way deducted $8,692 8 as alleged interest with respect to the outstanding notes. Of this $8,692, $3,026.57 was with respect to the notes that are*186 not contested by respondent. For the taxable years ended March 31, 1965, through March 31, 1969, Jon-Way's income tax returns reflected the following amounts of taxable income: TaxableTaxable Year EndedIncome3-31-65$24,874.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,783.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,520.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,582.413-31-69617.00 For the taxable years ending March 31, 1968, and March 31, 1969, Jon-Way paid cash dividends in the respective amounts of $2,000 and $200. The total amounts of the purported notes issued by Jon-Way to JFS in the years 1965, 1967 and 1968 were $25,650, $6,950 9 and $17,000, respectively. During the taxable year 1967 JFS received from Jon-Way a check for $5,253.50 as payment for interest due. JFS reported this income on its 1968 return. While the books and records of JFS indicated that it employed the accrual method of accounting with respect to the*187 sales of its lots, the records do not reflect the receipt or accrual of interest from the purported notes through December 31, 1967. 10 For the taxable year 1967 interest in the amount of $3,151.89 was due to JFS from Jon-Way. For the taxable year 1968 interest in the amount of $4,168.01 was due to JFS. These amounts included the interest due on the two notes respondent has determined are bona fide debt ($1,749.82 for each of the two years). For the taxable years 1966 and 1967 JFS had undistributed earnings and profits of $71,582.67 and $79,331.61, respectively. For the taxable year 1967 JFS did not declare and/or pay any dividends. In the notice of deficiency issued to the Stevenhagens (docket No. 2149-72), respondent determined that the Stevenhagens had dividend income of $11,353.68 for 1967 and $18,150.18*188 for 1968. One thousand dollars of the 1967 amount resulted from a dividend paid by Jon-Way to Stevenhagen which was not reported. The remainder of the amounts were determined to be constructive dividends resulting from JFS's advances to Jon-Way and the receipt of interest by JFS on these advances during the two years. OPINION Once again this Court is faced with the issue of whether advances by shareholders constitute contributions to capital (respondent's contention) or bona fide debt (petitioner's contention). 11 If the latter result is reached, Jon-Way is entitled to interest deductions on the notes; if the former is reached, the claimed interest deductions in issue are not allowable. Whether the advances by Breitenstine (directly or through WBB) and Stevenhagen (directly or through JFS) represent debt or equity is a question of fact, 12 and although the case*189 law provides us with certain tests to apply, the countless variations in facts necessarily preclude finding a case in point. See Litton Business Systems, Inc.,61 T.C. 367, 376 (1973); C. M. Gooch Lumber Sales Co.,49 T.C. 649, 656 (1968), remanded for entry of decision in accordance with compromise agreement of the parties, 406 F. 2d 290 (6th Cir. 1969). There is no single characteristic which is decisive in the determination of whether a debt exists or a capital investment has been made by the corporation's shareholders. John Kelley Co. v. Commissioner,326 U.S. 521 (1946). For petitioners to prevail they must prove the reality of the indebtedness. Trans-Atlantic Company v. Commissioner,469 F. 2d 1189, 1191 (3d Cir. 1972); Gooding Amusement Co.,23 T.C. 408 (1954), affd. 236 F. 2d 159 (6th Cir. 1956); Rule 142, Tax Court Rules of Practice and Procedure.*190 Our duty is to weigh the factors which are generally regarded as identifying the characteristic differences between debt and equity for income tax purposes. See Fin Hay Realty Co. v. United States,398 F. 2d 694 (3d Cir. 1968), for a comprehensive list of the criteria to consider. The Sixth Circuit, to which an appeal would lie in this case, has relied upon this objective criteria. See Austin Village, Inc. v. United States,432 F. 2d 741, 745 (6th Cir. 1970). The difficulty lies in determining the weight to be accorded the various factors considered, and the distinction often drawn between merely "evidentiary" factors and "ultimately determinative" factors. See Litton Business Systems, Inc.,supra.A review of the numerous cases in this area indicates that "the determinative question, to which an evaluation of the various independent factors should ultimately point, is as follows: Was there a genuine intention to create a debt, with a reasonable expectation of repayment, and did that intention comport with the economic reality of creating a debtor-creditor relationship?" Litton Business Systems, Inc.,supra at 377.*191 As applied to the instant situation, we must answer the question with a negative. In reaching this decision we have considered no single factor as controlling. Rather, our evaluation of the various factors has provided us with an evidential basis upon which we have reached our conclusion that the advances did not constitute bona fide debt. 13Jon-Way was engaged in the acquisition and development of real estate. Since its incorporation in 1962 its two shareholders made numerous advances, either directly or through their solely owned corporations, to the corporation to enable it to meet its financial requirements for purchasing and developing real estate. In our findings of fact we have sketched, to the extent the evidence permitted, the circumstances surrounding these advances. These circumstances reveal a consistent pattern of equal advances by each of the two shareholders (who owned Jon-Way equally) to meet the cash flow problem of their corporation. 14*192 Prior to March 31, 1965, Jon-Way did not issue any documents to evidence the advances. However, on March 31, 1965, and subsequent thereto, Jon-Way began to issue documents purporting to be unsecured interest bearing demand promissory notes. No interest was paid on the notes until 1967. In addition, throughout the years in issue there were also no payments made on the outstanding balances of the advances. The first four notes issued by Jon-Way consisted of two $9,750 notes issued to JFS and Breitenstine on March 31, 1965, and one $12,800 note to JFS and one $11,200 note to Breitenstine, both issued on June 30, 1965. On March 31 no advances were made by the two shareholders or their corporation. From April 23, 1965, through June 30, 1965, Breitenstine or his corporation made advances of $1,000, $1,500 and $17,000 and Stevenhagen or his corporation made similar advances of $1,000, $1,500 and $17,000. On June 30, 1965, the net balances on the amounts advanced by Stevenhagen (and/or JFS) and Breitenstine (and/or WBB) plus their initial capital contribution equalled the amount due on the notes. Subsequent to June 30, 1965, the face amounts of the notes issued comported to the*193 amounts advanced with each note being contemporaneously issued as the advances were made. As we noted in our findings of fact, repayments on the advances were made in multiples of $1,600. The evidence indicates that these payments were correlated to the sale of lots by Jon-Way with the payee being the seller of the particular lot (or lots( involved. Thus, while the advances were consistently made in equal amounts 15 the repayments were not. The last payment to Breitenstine was made on April 23, 1965; the last to Stevenhagen on September 7, 1966. In determining whether the transactions constituted bona fide loans, the intent of the parties is important. Donisi v. Commissioner,405 F. 2d 481, 483 (6th Cir. 1968); Byerlite Corporation v. Williams,286 F. 2d 285, 290-294 (6th Cir. 1960). However, such intent must be viewed with some diffidence unless supported by other facts which bring the transaction much closer to a normal arm's-length loan. Berthold v. Commissioner,404 F. 2d 119, 122 (6th Cir. 1968).*194 In the instant situation the petitioners have put the form of the transactions into debt instruments.16 However, the formal indicia of debt are not of themselves sufficient to establish a bona fide indebtedness unless supported by other more persuasive factors. Litton Business Systems, Inc.,supra at 378; Gooding Amusement Co.,supra at 418. Here there is lacking the "other more persuasive factors." Compare Piedmont Corporation v. Commissioner,388 F. 2d 886, 890 (4th Cir. 1968), reversing a Memorandum Opinion of this Court. On the evidence in this case we find that all of the*195 advances in issue did not constitute bona fide debt, but rather actually reflected the intent of the parties to invest in Jon-Way through capital contributions. See Austin Village, Inc. v. United States,supra. There was a consistent direct relationship between the advances and the equity holdings of the shareholders, no sinking funds were established to retire the purported loans, the repayments that were made were keyed to the actual sales of real estate, there was no fixed schedule for repayment, while the notes were payable on demand, Stevenhagen and Breitenstine ran Jon-Way and would not have demanded payment that would have jeopardized Jon-Way's viability and none of the advances were secured. Contrasted with this evidence is the fact that Jon-Way's advances from commercial lending institutions required mortgages plus other security (e.g., assignment of lease interests), repayments of these advances were timely made, there were instances of shareholder advances to enable Jon-Way to make its mortgage payments, and interest was paid on these commercial transactions while interest on the shareholder transactions was not paid until 1967. We also note the high*196 debt-equity ratio of Jon-Way and the inclusion of the initial equity contribution in the notes as part of the advances. In reaching our conclusion that a bona fide indebtedness did not exist, we have carefully reviewed petitioners' arguments. However, we have found their arguments unpersuasive. Their alleged intentions do not comport with the realities of the situation. We have also given consideration to the cases relied upon by petitioners. See e.g., Piedmont Corporation v. Commissioner,supra;Tomlinson v. 1661 Corporation,377 F. 2d 291 (5th Cir. 1967); Lundgren v. Commissioner,376 F. 2d 623 (9th Cir. 1967); Gloucester Ice & Cold Storage Co. v. Commissioner,298 F. 2d 183 (1st Cir. 1962); Rowan v. United States,219 F. 2d 51 (5th Cir. 1955); Green Bay Structural Steel, Inc.,53 T.C. 451 (1969); Malone & Hyde, Inc.,49 T.C. 575 (1968); Baker Commodities, Inc.,48 T.C. 374 (1967), affd. 415 F. 2d 519 (9th Cir. 1969), certiorari denied 397 U.S. 988 (1970). However, as previously noted, because of the factual nature*197 of the issue, the decided cases can only given us guidance, and the facts herein do not support a finding of an intention to create a bona fide indebtedness. We, therefore, hold respondent did not err in disallowing the purported interest deductions. We next must resolve the issue of whether the advances by JFS to Jon-Way during 1967 and 1968 and the purported interest payments thereon during these years constituted a constructive dividend to Stevenhagen. Respondent argues that the advances from JFS initially were for the purpose of getting Jon-Way underway and later for furthering Jon-Way's business, paying its expenses, and, in general, making Jon-Way a viable and profitable corporation--all of which served to enhance the value of Stevenhagen's 50 percent interest in Jon-Way. Petitioners argue that the advances were made for bona fide business reasons, to a successful business, and to the general advantage of all concerned. It is well established that distributions by a corporation will be treated as a dividend to the shareholder if the distributions are made for the shareholder's personal*198 benefit. The funds need not be distributed directly to the shareholder. Rapid Electric Co.,61 T.C. 232, 239 (1973); cf. Challenge Manufacturing Co.,37 T.C. 650, 663 (1962). In the instant case JFS had no equity interest in Jon-Way. Since its contributions enhanced Stevenhagen's investment in Jon-Way, they were clearly for his benefit. The benefit was direct, not derivative. While it is true that JFS stood to gain if Jon-Way were profitable, we view this benefit as derivative to Stevenhagen's direct benefit. Consequently, these advances constitute a constructive dividend to Stevenhagen. Compare W. B. Rushing,52 T.C. 888 (1969), affd. 441 F. 2d 593 (5th Cir. 1971). Since the purported interest payments on the advances are but the fruit on the tree, they too must be classified as a constructive dividend to Stevenhagen. Cf. Helvering v. Horst,311 U.S. 112 (1940). 17*199 We are left with the issue of whether JFS is an accrual method taxpayer with respect to interest payments on the two notes respondent is not contesting. Section 446(a)18 provides that taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. Section 1.446-1(a)(1), Income Tax Regs. JFS' books indicate that while it employed the accrual method of accounting with respect to its lot sales, interest income was generally reported on the cash method. The books reflect no accrual of interest from Jon-Way through December 31, 1967. *200 Respondent, relying upon section 446(d) which provides that a taxpayer engaged in more than one trade or business may in computing taxable income employ a different method of accounting for each trade or business, and section 1.446-1(c)(1)(iv), 19 Income Tax Regs., which provides that a taxpayer using the accrual method of accounting with respect to purchases and sales may use the cash method in computing all other items of income and expense, submits that JFS must report the interest received on the bona fide notes from Jon-Way on the cash method. JFS, on the other hand, contends that it intended to keep all items on its books on the accrual method and that entries on the cash method were due to error on the part of their accountant. *201 It is our opinion that the interest income from the two bona fide Jon-Way notes should be accrued, and that JFS is not bound by its recording errors. Respondent's reliance on section 446(d) is misplaced. The receipt of interest did not constitute a separate trade or business. See section 1.446-1(d), Income Tax Regs. While section 1.446-1(c)(1)(iv)(a), Income Tax Regs., will support respondent's position that a taxpayer may employ a combination of methods, we do not believe that JFS intended to employ a different method of accounting with respect to the interest on the notes. In addition, section 1.446-1(c)(1)(iv)(a), Income Tax Regs., requires that all other items of income and expense be accounted on the cash method for the sentence relied upon by respondent to apply. JFS' books do not reflect that such was the case. Section 1.446-1(c)(1)(iv)(b), Income Tax Regs., also does not support respondent's position since the debt is connected with JFS' property transactions with Jon-Way. Furthermore, because of the close relation between the notes to the real estate operation described herein, we believe it would be improper for JFS to use*202 the cash method with respect to this interest when it employs the accrual method with respect to the lot sales. Cf. Birch Ranch & Oil Co. v. Commissioner,152 F. 2d 874 (9th Cir. 1946). To reflect our findings and to reflect other adjustments, Decisions will be entered under Rule 155.Footnotes1. Cases of the following petitioners are consolidated herewith: John F. Stevenhagen and Patricia Stevenhagen, docket No. 2149-72; and Jon-Way Developers, Inc., docket No. 2150-72.↩2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩3. Jon-Way also assumed a mortgage for $146,000.↩4. Assumed upon acquisition of land from JFS.↩4a. These dates were stipulated. Although it appears that the "1-3-67" date is incorrect, no supporting evidence was presented to allow us to ascertain the correct date.↩5. The discrepancy between the listed purchase price of $55,000 and the totaling of the $18,000 downpayment and $35,000 mortgage was not explained.↩6. Further evidence was not presented to allow us to complete this detailed sketch explaining the financial transactions between Jon-Way and its two shareholders (or their corporations). However, the evidence indicates that periodic advances continued to be made and it appears probable, due to the established method of operation, that they were made for similar reasons.↩7. This total amount of $32,550 advanced by each shareholder does not include two notes issued by Jon-Way on January 1, 1967, in the amounts of $25,535 to WBB and JFS to purchase parcels of real estate owned by each corporation. Nor does Stevenhagen's $32,550 total include $9,461.48 advanced by JFS and evidenced by a demand promissory note dated January 1, 1967. This advance was with respect to the real estate purchased by Jon-Way from JFS. Respondent has determined that these three notes represent bona fide indebtedness. Also not included in Breitenstine's $32,550 total are two advances evidenced by notes issued to him in the amounts of $5,000 each on January 18, 1967, and February 3, 1967. These advances were also with respect to the real estate purchased by Jon-Way from JFS. We have not included this $10,000 in Breitenstine's total since it closely parallels the above additional advance by JFS. This does not mean, however, that we have found this $10,000 to be debt.↩8. This amount was not stipulated. Respondent disallowed $5,665.43. Adding the $3,026.57 allowed by respondent we reach the cited figure.↩9. This total does not include the notes issued January 1, 1967, for JFS in the amounts of $25,535 and $9,461.48. Respondent is not contesting these two notes.↩10. We also note that the books indicate that JFS generally recorded its income interest from certificates of deposit on the cash method. These certificates of deposit were from sales made to buyers with insufficient down payments. However, there is one accrual entry with respect to these items for December 31, 1965. Other types of items were accrued (e.g., salaries, etc.).↩11. For a detailed article on the debt-equity question see Plumb, The Federal Income Tax Significance of Corporate Debt: A Critical Analysis and a Proposal, 26 Tax L. Rev. 369↩ (1971). See also Bittker and Eustice, Federal Income Taxation of Corporations and Shareholders (3d Ed. 1971), chapter four.12. However, note the language in Austin Village, Inc. v. United States,432 F. 2d 741, 744 (6th Cir. 1970). Compare with Ragland Investment Company v. Commissioner,435 F. 2d 118, 119-120↩ (6th Cir. 1970).13. This approach follows that of Litton Business Systems, Inc.,supra.↩14. This is not to say that Jon-Way was not a successful operation, but rather that it needed cash to cover current expenditures to enable it to be a financially viable operation.↩15. In our findings of fact we here explained the only instances of apparent unequal advances.↩16. We note that while all of the purported debt instruments are similar in form, respondent is not contesting three of the notes. We were not apprised of the reason for this apparent↩ inconsistency. However, we do note that these three notes were with respect to properties purchased by Jon-Way from JFS and WBB. Regardless of respondent's motive in not contesting these notes, we do not consider this treatment as a factor suggesting the bona fideness of the other notes.17. The two advances evidenced by notes issued to JFS by Jon-Way which respondent is not contesting do not constitute constructive dividends because respondent has determined that a bona fide creditor-debtor relationship existed. Because of the existence of a bona fide debt the economic benefit and motivation falls primarily with JFS and not Stevenhagen. Where the advances constitute contributions to capital there is a direct benefit to Stevenhagen, but where the advances constitute debt the benefit to Stevenhagen is derivative and secondary to the benefit to JFS. This type of benefit does not constitute a constructive dividend. See W. B. Rushing,supra at 893-894; cf. Rapid Electric Co.,supra↩ at 239-240. As the interest paid on these two notes is likewise but the fruit on the tree, these payments are also not constructive dividends.18. SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING. (a) General Rule.--Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. (b) Exceptions.--If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income. (c) Permissible Methods.--Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting-- (1) the cash receipts and disbursements method; (2) an accrual method; (3) any other method permitted by this chapter; or (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate. (d) Taxpayer Engaged in More Than One Business.--A taxpayer engaged in more than one trade or business may, in computing taxable income, use a different method of accounting for each trade or business.↩19. (iv) Combinations of the foregoing methods.(a) In accordance with the following rules, any combination of the foregoing methods of accounting will be permitted in connection with a trade or business if such combination clearly reflects income and is consistently used. Where a combination of methods of accounting includes any special methods, such as those referred to in subdivision (iii) of this subparagraph, the taxpayer must comply with the requirements relating to such special methods. A taxpayer using an accrual method of accounting with respect to purchases and sales may use the cash method in computing all other items of income and expense. However, a taxpayer who uses the cash method of accounting in computing gross income from his trade or business shall use the cash method in computing expenses of such trade or business. Similarly, a taxpayer who uses an accrual method of accounting in computing business expenses shall use an accrual method in computing items affecting gross income from his trade or business. (b)↩ A taxpayer using one method of accounting in computing items of income and deductions of his trade or business may compute other items of income and deductions not connected with his trade or business under a different method of accounting.